# BNSF RAILWAY
## EMPLOYEE TRANSCRIPT

| EMPLOYEE ID | 1550813 | | EMPLOYEE AGE | | 38 |
|---|---|---|---|---|---|
| NAME | Oropeza, Frank A | | ORIGINAL HIRE DATE | | 2002-07-08 |
| ADDRESS | 1204 NE 73rd st | | LAST HIRE DATE | | 2002-07-08 |
| | Gladstone MO 64118 | | | | |

**BNSF EMPLOYMENT HISTORY**

| DATE | TITLE | LOCATION | CD | DESCRIPTION |
|---|---|---|---|---|
| 2002-07-08 | CONDUCTOR (UTU) | KANSAS CITY,KS | EM | Hire |
| 2002-10-04 | CONDUCTOR (UTU) | KANSAS CITY,KS | CT | Craft Transfer |
| 2003-04-10 | CONDUCTOR (UTU) | KANSAS CITY,KS | GT | Grade/Title Chg |
| 2003-04-28 | CONDUCTOR (UTU) | KANSAS CITY,MO | CL | Change Location |
| 2003-05-01 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-05-21 | BRAKEMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-05-26 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-07-03 | BRAKEMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-07-08 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-07-11 | CONDUCTOR (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-07-13 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-07-29 | CONDUCTOR (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-07-30 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-09-02 | CONDUCTOR (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-09-03 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-09-26 | CONDUCTOR (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2003-09-27 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2004-07-01 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2004-08-02 | CONDUCTOR (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2004-08-03 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2004-08-24 | CONDUCTOR (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2005-01-02 | ENGINEER (BLET) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2005-03-28 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2005-03-29 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2005-04-05 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2005-04-08 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2005-05-31 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2005-06-01 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2005-07-14 | CONDUCTOR (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2005-07-15 | ENGINEER (BLET) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2005-07-19 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2005-07-20 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-02-25 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-03-06 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-07-16 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-07-18 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-07-21 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-07-23 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-07-31 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-08-30 | SWITCHMAN (UTU) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2006-09-12 | ENGINEER (BLET) | KANSAS CITY,MO | GT | Grade/Title Chg |
| 2006-10-03 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |



PENGAD 800-631-6989

DEFENDANT'S DEPOSITION EXHIBIT

| 2006-10-05 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
|---|---|---|---|---|
| 2006-10-10 | ENGINEER (BLET) | KANSAS CITY, MO | CL | Change Location |
| 2006-10-23 | ENGINEER (BLET) | KANSAS CITY, MO | CL | Change Location |
| 2006-11-07 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-11-13 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-11-23 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-11-26 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-11-27 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-12-24 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-12-25 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2006-12-28 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2007-01-03 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2007-01-04 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2007-01-06 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2007-01-08 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2007-01-10 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2007-02-07 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2007-04-21 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2008-04-09 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2008-04-17 | ENGINEER (BLET) | KANSAS CITY,MO | CL | Change Location |
| 2009-06-02 | ENGINEER (BLET) | | SP | Suspension |
| 2009-06-02 | ENGINEER (BLET) | TOPEKA HQ,KS | CL | Change Location |
| 2010-02-10 | Engineer (BLET) | TOPEKA HQ,KS | CL | Change Location |
| 2010-05-12 | Engineer (BLET) | TOPEKA HQ,KS | CL | Change Location |
| 2010-05-19 | Engineer (BLET) | TOPEKA HQ, KS | RI | Reinstate From Suspension |
| 2014-09-30 | Engineer (BLET) | TOPEKA HQ, KS | DI | Dismissed For Cause |

DISCIPLINE RECORD

| DISCIPLINE | | | REVIEW | VIOLATION | INVESTIGATION | |
|---|---|---|---|---|---|---|
| DATE | LEVEL | DISCIPLINE TYPE | PERIOD | DATE | HELD | DATE |
| 2006-07-07 | 00 | FORMAL REPRIMAND | | 2006-05-31 | Y | |
| INV - 7/29/06 - CONCERNING VIOLATION OF BNSF ATTENDANCE GUIDELINES | | | | | | |
| SPECIFICALLY EXCEEDING THREE MONTH THRESHOLD FOR PERIOD ENDING | | | | | | |
| MAY 31, 2006 | | | | | | |
| 2007-06-12 | 00 | RECORD SUSPENSION | | 2007-04-30 | Y | |
| INV. 5/30/07 - (10 DAYS) CONCERNING EXCEEDING 3 MONTH THRESHOLD PER | | | | | | |
| ATTENDANCE GUIDELINES FOR THE PERIOD ENDING APRIL 30, 2007. | | | | | | |
| 2007-12-20 | S | RECORD SUSPENSION | 36 | 2007-11-06 | Y | |
| INV 12/13/07 @ 0900 HRS (30 DAY W/ 3 YR PROB) - CONCERNING FAILURE | | | | | | |
| TO COMPLY W/ INSTRUCTIONS CONTAINED WITHIN THE CERTIFIED LETTER DATED | | | | | | |
| 11/06/07 CONCERNING FMLA LEAVE | | | | | | |
| 2009-01-16 | | FORMAL REPRIMAND | | 2008-11-30 | Y | |
| INV 01/07/09 @ 0900 EXCEEDING THREE-MONTH THRESHOLD, PER | | | | | | |
| ATTENDANCE GUIDELINES FOR PERIOD ENDING 11/30/08 GCOR 1.13 AND | | | | | | |
| NEBRASKA GENERAL NOTICE 408 | | | | | | |
| 2009-01-22 | | RECORD SUSPENSION | | 2009-01-06 | N | |
| WAIVER 01/21/2009 10 DAY LAYING OFF ON CALL WHEN CALLED FOR TRAIN | | | | | | |
| G WICWH-HW9 05A GCOR 1.13 SPRINGFIELD DIV. GENERAL NOTICE NUMBER 298 | | | | | | |
| TYE LAYOFF POLICY | | | | | | |
| 2009-01-27 | 00 | RECORD SUSPENSION | | 2008-12-31 | Y | |
| INV 01/22/09 @ 1000 10 DAY EXCEEDING THREE-MONTH THRESHOLD, PER | | | | | | |
| ATTENDANCE GUIDELINES FOR PERIOD ENDING DEC 31, 2008 GCOR 1.13 | | | | | | |
| 2009-04-30 | 00 | RECORD SUSPENSION | | 2009-02-28 | Y | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| PERIOD ENDING FEBRUARY 28, 2009 PER ATTENDANCE GUIDELINES | | | | | | | |
| GCOR 1.13 | | | | | | | |
| 2009-06-02 | S | SUSPENSION ACTUAL | 36 | | 2009-04-30 | Y | |
| INV 05/21/09 @ 1000 CONCERNING EXCEEDING 3-MONTH THRESHOLD, PER | | | | | | | |
| ATTENDANCE GUIDELINES FOR PERIOD ENDING APRIL 30, 2009 GCOR 1.13 | | | | | | | |
| SUSPENSION FROM 06/02/2009 - 05/19/2010 | | | | | | | |
| 2011-11-01 | 00 | FORMAL REPRIMAND | 00 | | 2011-11-11 | N | |
| WAIVER 11/01/2011 FAILURE TO PROTECT ASSIGNMENT AND MISSED CALL AT 0001 | | | | | | | |
| HRS ON OCTOBER 11, 2011 WHEN BEING CALLED FOR ASSIGNMENT AS CREW MEMBER | | | | | | | |
| ON TRAIN U-SJ0CAK8-10B GCOR 1.16 | | | | | | | |
| 2012-01-20 | S | RECORD SUSPENSION | 36 | | 2011-11-13 | N | |
| WAIVER 1/19/12, 30 DAY, NEGLIGENCE AND INDIFFERENCE TO DUTY BY FAILURE | | | | | | | |
| TO COMPLY WITH INSTRUCTIONS CONCERNING LOADED STEEL MOVEMENT RESTRICTION | | | | | | | |
| GCOR 1.13 AND GCOR 1.6 | | | | | | | |
| 2012-03-14 | 00 | FORMAL REPRIMAND | 12 | | 2012-02-29 | N | |
| WAIVER 3/14/12, VIOLATION OF THE BNSF ATTENDANCE GUIDELINES FOR THREE | | | | | | | |
| MONTH PERIOD ENDING FEBRUARY 2012, GCOR 1.13, GCOR 1.15 AND GN 972 | | | | | | | |
| 2013-09-18 | 00 | FORMAL REPRIMAND | 12 | | 2013-08-31 | N | |
| WAIVER 9/18/13 CONCERNING YOUR RESPONSIBLITY FOR VIOLATION OF ATTENDANCE | | | | | | | |
| GUIDELINES FOR ABSENCE FROM DUTY IN EXCESS FOR JUN JUL AUG 2013 | | | | | | | |
| GCOR 1.13 GN 37 | | | | | | | |
| 2014-04-14 | 00 | RECORD SUSPENSION | 12 | | 2014-02-28 | N | |
| WAIVER 4/14/14 10DAY YOUR RESPONSIBILITY FOR VIOLATION OF THE BNSF ATTEN | | | | | | | |
| DANCE GUIDELINES DURING DEC 2013, JAN, FEB 2014 - GCOR 1.13, 1.15, GN 37 | | | | | | | |
| 2014-09-30 | D | DISMISSED | NA | | 2014-07-25 | Y | 2014-09-18 |
| INV@ 1100 ON 9/18/14 FAILURE TO COMPLY WITH INSTRUCTIONS ISSUED IN CERTI | | | | | | | |
| FIED LETTER BY GREG D. WRIGHT DATES 11/4/13 CONCERNING FEQUENCY/DURATION | | | | | | | |
| OF YOUR FMLA ABSENCES FROM 9/11/13AND CONTINUING. GCOR 1.6,GCOR 1.13 | | | | | | | |

| PERSONAL INJURY RECORD | | | | | | |
|---|---|---|---|---|---|---|
| DATE | CASE NO. | | LOST DAYS | TYPE PERSON | REPORTABLE | SEVERITY |
| NO DATA FOR INJURY AVAILABLE | | | | | | |

| EMPLOYEE LEAVES | | | |
|---|---|---|---|
| CD | LEAVE DESCRIPTION | BEGIN DATE | END DATE |
| SK | Medical Leave | 2013-05-31 | 2013-07-25 |

| QUALITY / RULES / SAFETY TRAINING | |
|---|---|
| DATE | COURSE NAME |
| 1900-01-01 | |
| 2002-07-08 | BIENNIAL RULES TEST |
| 2002-07-08 | RECOG & AVOID HARRASSMNT |
| 2002-07-08 | RULES EXAM |
| 2002-10-04 | NEW HIRE CONDUCTOR SF |
| 2003-05-16 | TRIENNIAL RCO TRAIN RIDE |
| 2003-05-22 | TRIENNIAL TRAIN RIDE |
| 2003-05-23 | REMOTE CONTROL OPERATOR TRNG |
| 2004-10-06 | BIENNIAL RULES TEST |
| 2004-10-06 | POWER BRAKE LAW CERTIFICATION |
| 2004-10-06 | RULES EXAM |
| 2004-10-06 | TYE BIENNIAL TRNG |
| 2005-05-16 | MECHANICAL TEST |
| 2005-05-16 | STUDENTS SIMULATOR TEST |
| 2005-05-17 | ABTH |

| | STUDENTS SIMULATOR TEST |
|---|---|
| 2005-05-17 | TRIENNIAL RULES TEST |
| 2005-05-18 | GCOR |
| 2005-05-18 | RULES EXAM |
| 2005-05-18 | TRIENNIAL RULES TEST |
| 2005-07-10 | SIMULATOR SCORED |
| 2005-07-11 | ABTH |
| 2005-07-11 | SIMULATOR SCORED |
| 2005-07-11 | STUDENTS SIMULATOR TEST |
| 2005-07-13 | LOCOMOTIVE ENGINEER TRNG |
| 2005-07-13 | TRIENNIAL TRAIN RIDE |
| 2006-08-17 | ANNUAL TRAIN RIDE |
| 2006-08-17 | TYE ANNUAL TRAIN RIDE |
| 2007-01-27 | ANNUAL TRAIN RIDE |
| 2007-08-01 | SECURING AMERICA'S RAILROADS |
| 2007-08-02 | HAZARD COMMUNICATIONS |
| 2007-08-02 | HAZARDOUS MATERIALS FOR TRANSP |
| 2007-08-02 | POWER BRAKE LAW CERTIFICATION |
| 2007-08-02 | SECURING AMERICA'S RAILROADS |
| 2007-08-02 | SECURING AMERICAS RAILROADS |
| 2007-08-02 | TYE RULES |
| 2007-08-03 | BIENNIAL RULES TEST |
| 2007-08-03 | GCOR RULES REVIEW |
| 2007-08-03 | LOCOMOTIVE CAB COMMUNICATION |
| 2007-08-03 | RULES EXAM |
| 2007-08-03 | TYE EXAM |
| 2007-08-03 | TYE HAZMAT EXAM |
| 2007-08-03 | TYE PBL EXAM |
| 2007-08-03 | TYE RULES |
| 2008-07-08 | HAZARD COMMUNICATIONS |
| 2008-07-08 | NETSIM LOCOMOTIVE ENGINEER REC |
| 2008-07-08 | SECURING AMERICA'S RAILROADS |
| 2008-07-08 | SECURING AMERICAS RAILROADS |
| 2008-07-09 | GCOR TRINETSIM RULES |
| 2008-07-09 | HAZARDOUS MATERIALS FOR TRANSP |
| 2008-07-09 | NETSIM LER EXAM |
| 2008-07-09 | NETSIM LER EXAM 2 |
| 2008-07-09 | POWER BRAKE LAW CERTIFICATION |
| 2008-07-09 | TYE HAZMAT EXAM |
| 2008-07-09 | TYE HAZMAT EXAM 2 |
| 2008-07-09 | TYE PBL EXAM |
| 2008-07-09 | TYE PBL EXAM 2 |
| 2008-07-10 | LOCO ENGINEER RECERT NETSIM |
| 2008-07-10 | NETSIM LER EXAM 3 |
| 2008-07-10 | RULES EXAM |
| 2010-06-18 | 218 SUBPART F |
| 2010-06-18 | 8 DEADLY DECISIONS |
| 2010-06-18 | HEARING CONSERVATION |
| 2010-06-18 | HUMAN RESOURCES FOR TYE |
| 2010-06-18 | MOVEMENTS UNDER CONTROL |
| 2010-06-18 | RAILROAD SECURITY |
| 2010-06-18 | RETURN TO WORK REQUIREMENTS |

D000045

| | SAFETY YEAR A |
|---|---|
| | SAFETY YEAR A |
| 2010-06-18 | SAFETY YEAR B |
| 2010-06-18 | WHAT'S MY RISK |
| 2010-06-19 | GCOR RULES REVIEW |
| 2010-06-19 | HAZARD COMMUNICATIONS |
| 2010-06-19 | HAZARDOUS MATERIALS FOR TRANSP |
| 2010-06-19 | POWER BRAKE LAW CERTIFICATION |
| 2010-06-19 | YEAR A HAZMAT EXAM |
| 2010-06-20 | CERT EXAM |
| 2010-06-20 | CERT EXAM 2 |
| 2010-06-20 | RETURN TO WORK REQUIREMENTS |
| 2010-10-07 | TYE ANNUAL TRAIN RIDE |
| 2011-01-03 | FRA INSTRUCTIONA |
| 2011-02-17 | FRA INSTRUCTIONA |
| 2011-02-17 | HAZMAT RULES TO REVIEW TRANS ( |
| 2011-02-17 | HOURS OF SERVICE FOR TYE |
| 2011-02-18 | HAZARDOUS MATERI |
| 2011-02-18 | POSITIVE TRAIN CONTROL - YEAR |
| 2011-02-18 | TRANSPORTATION HAZMAT EXAM FLO |
| 2011-03-09 | TRANSPORTATION HAZARD COMMUNIC |
| 2011-06-14 | GCOR RULES REVIEW |
| 2011-06-14 | NETSIM TRAINING - YEAR A |
| 2011-06-14 | NMG MIXED FREIGHT 1A |
| 2011-06-14 | NMG MIXED FREIGHT 1B |
| 2011-06-14 | NMG UNUSUAL CONDITIONS GRAIN 1 |
| 2011-06-14 | RULES EXAM FLOW AUTO PROCTOR - |
| 2011-07-12 | DEADLY DECISIONS |
| 2011-07-12 | GOOD FAITH CHAL/SHOVE IN CLEAR |
| 2011-07-12 | POWER BRAKE LAW CERTIFICATION |
| 2012-03-09 | ANNUAL FRA HEARING CONSERVATIO |
| 2012-03-09 | ANNUAL HAZARDOUS MATERIALS FOR |
| 2012-03-09 | ANNUAL HOURS OF SERVICE FOR TY |
| 2012-03-09 | ANNUAL RAILROAD SECURITY |
| 2012-03-09 | ANNUAL TRANSPORTATION HAZARD C |
| 2012-03-09 | ANNUAL TRANSPORTATION HAZMAT E |
| 2012-04-01 | EMS/DRIVER ASSIST INITIAL TRAI |
| 2012-07-02 | ANNUAL SCIENCE OF SLEEP AND FA |
| 2012-07-05 | NETSIM TRAINING - YEAR A |
| 2012-07-05 | NMG INTERMODAL 9A |
| 2012-07-05 | NMG INTERMODAL 9B |
| 2012-07-05 | NMG UNUSUAL CONDITIONS GRAIN 1 |
| 2013-01-01 | 218 SUBPART F |
| 2013-01-01 | DEADLY DECISIONS |
| 2013-01-01 | POWER BRAKE LAW |
| 2013-01-02 | ANNUAL GCOR RULES REVIEW |
| 2013-01-02 | ANNUAL HIGH WIDE |
| 2013-01-02 | ELECTRONIC DEVICES |
| 2013-01-02 | RULES EXAM FLOW MAN PROCTOR - |
| 2013-01-02 | TERRITORY RULE FLOW CERT MANPR |
| 2013-08-06 | CLOSED RULE FLOW CERT MANPROCT |
| 2013-08-06 | CLOSED RULE SING CERT MANPROCT |
| 2013-08-28 | UTILITY VEHICLE SAFETY TRNG WB |

Case 4:16-cv-01013-O Document 31-2 Filed 06/06/17 Page 5 of 106

| | ANNUAL FRA HEARING CONSERVATIO |
|---|---|
| | |
| 2014-01-02 | ANNUAL HAZARD CO |
| 2014-01-02 | ANNUAL HAZARDOUS |
| 2014-01-02 | ANNUAL HOURS OF SERVICE FOR TY |
| 2014-01-02 | ANNUAL RAILROAD SECURITY |
| 2014-01-02 | ANNUAL SCIENCE OF SLEEP AND FA |
| 2014-01-02 | ANNUAL TRANSPORTATION HAZMAT E |
| 2014-03-20 | NETSIM TRAINING - YEAR A |
| 2014-03-20 | NMG DISTRIBUTED POWER GRAIN 7B |
| 2014-03-20 | NMG INTERMODAL 9A |
| 2014-03-20 | NMG UNUSUAL CONDITIONS GRAIN 1 |

| | | | Close |
|---|---|---|---|

D000047

Exhibit A

-------------------------------------------------------------------
                              July 23, 2014

    BNSF Railway Co.
    ALL DIVISIONS

                        SYSTEM GENERAL NOTICE No. 73

    TO ALL CONCERNED,

    SUBJECT:  TY&E Leaves of Absence

    System General Notice No. 28 is cancelled.

    *************************************************************
    Explanation:
    - C4. Military Leaves, updated
    *************************************************************

    Table of Contents

    A. Trauma Intervention With Authorized Paid Leave
    B. Family and Medical Leave (FMLA)
    C. General Leave Information
       C1. Return from Leave
       C2. Leave Extensions and Failure to Return
       C3. Medical Leaves for Illness, Off-Duty and On-Duty Injury Medical
           Leaves
       C4. Military Leaves
       C5. Miscellaneous Leaves (Personal and Union Duty)

    ===========================================================
    A. Trauma Intervention With Authorized Paid Leave

    Employees distressed following a critical incident may request relief
    from duty from their supervisor.  Supervisors are responsible for
    authorizing time off, informing the employee of program requirements and
    completing the Supervisor's Report of Injury/Occupational Illness Report
    when needed, as described below. The Employee Assistance Program (EAP) is
    responsible for providing trauma intervention services.

    Employees may request additional time off beyond the initial uncompleted
    trip. All additional time off will be paid at the basic daily rate of pay
    only if the employee is participating with EAP trauma intervention
    services.

    The Trauma Intervention Process is outlined as follows:
    1.  Employee requests relief from duty from his/her supervisor following
        a critical incident.
    2.  The employee will be returned to his/her home terminal. The employee
        employee will be paid for the balance of trip miles not completed
        under applicable collective bargaining agreements.
    3.  The supervisor completes the "Employee Instructions" letter, explains
        the program to the employee, gives the employee a copy of the letter,
        and faxes a copy of the letter to EAP at 817-352-1637 (BNSF line).


DEFENDANT'S DEPOSITION
EXHIBIT
B
51-17mp

D000281

4. The supervisor contacts the EAP 24/7 number 800-383-2327 and gives
   the following information:
   a. Supervisor name and phone number
   b. Location and description of incident
   c. Names of crew members
   d. If the crew was relieved at the scene
5. The supervisor explains to the employee that he/she is relieved from
   the current tour of duty only and remains marked up. If the employee
   is unable to report for their next tour of duty, he or she must
   contact his or her supervisor.
6. If the employee requests additional time off and, as a result, does
   not work the next regularly scheduled shift, the supervisor must then
   contact the On-Duty Injury Care hotline, 888-634-1011, and complete
   the web-based Supervisor's Report of Injury/Occupational Illness
   Report. The employee does not need to fill out an Employee Personal
   Injury/Occupational Illness Report.
7. When the EAP determines that the employee is medically fit to return
   to duty, the EAP will contact the supervisor and confirm the return
   to duty by sending the supervisor a Fitness for Duty form. The
   first-line supervisor must inform the Division General Manager of all
   employees using this program.

Employees who fail to follow this process will not be compensated for any
time off as a result of a critical incident.

============================================================================
B. Family and Medical Leave (FMLA)

An employee will be eligible for FMLA if he or she has 12 months of
employment with BNSF and worked at least 1,250 hours during the preceding
12 months. Employees requiring leave on a continuous basis for their own
medical condition must apply for a Medical Leave. Once a Medical Leave
has been approved FMLA eligibility will be determined and the time away
from work will be deemed FMLA when appropriate. It is not necessary for
the employee to complete a separate FMLA application. The employee will
receive written notification regarding the FMLA status of a medical
leave.

For all other requests for leave under the Family/Medical Leave Act,
complete a Notice of Intent to Take Paid/Unpaid Family/Medical Leave form
and mail or fax the completed form to the attention of the Benefits
Processing Team in Fort Worth. A copy must also be provided to the
supervisor. In addition, a Certification of Health Care Provider form
should be completed by the employee's physician or family member's
physician.

The fully completed Certification of Health Care Provider form must be
forwarded directly from the physician's office for review and must be
received within 15 days of request for leave. Faxes from a doctor's
office are preferred. The fax number is on the bottom of the
certification form. The physician should be advised that incomplete forms
will be returned and will delay the processing of the request. In
addition, the physician should be encouraged to avoid use of words such
as "unknown" or "undetermined." An anticipated duration of the leave is
needed and can be noted as an estimate.

Eligible employees seeking to use FMLA should note that while advance

D000282

Exhibit A

notice of the need for leave is preferred, it is understood that cannot always be done. However, in the event of an unexpected absence, the employee must notify the crew office as soon as practicable, which will generally be within two working days of the time off. Failure to request leave in a timely manner may result in the leave not being deemed FMLA.

The employee requesting leave will receive a written notification indicating whether the leave has been granted or denied. The Benefits Department may be contacted at 800-234-1283 or BNSF line 593-6400 if there are any questions.

The required forms are available through several means:
1. Fax on Demand. Call toll free at 1-800-850-6709, BNSF line 8-298-2115 or the landline 651-298-2115. Follow the prompts, and when requested, enter the form #13053.
2. On the BNSF Intranet site. http://bnsfweb.bnsf.com/departments/hr/
3. From the Internet (Employee Tab) click on the tab "benefits" then under the Heading "Navigate Life Events" click "Leave of Absence (including FMLA)". This document contains Frequently Asked Questions, BNSF Family and Medical Leave Policy and the Application for FMLA.
4. Call the Benefits Processing Team at 800-234-1283 or BNSF line 8-593-6400.
5. Obtain the forms from the supervisor.

===================================================================

C. General Leave Information

Employees are responsible for covering absences from work through their supervisor.

Employees must request a formal Leave of Absence (LOA) for any absence from work 10 or more calendar days in duration, unless union agreement differs (15 or more calendar days for ATSF Coastline employees). Leaves must be covered by completing an electronic form. Engaging in outside employment or business during the term of your leave is not permitted unless special written authority is granted.

Requests for these leaves must be completed electronically:
1. Medical Leave (for illness and off duty injuries)
2. On Duty Injury Medical Leave
3. Military Leave for Global War on Terror (GWOT)
4. National Guard, Drill, State Emergency Leave
5. Military Service (Other than GWOT), Enlistment, Misc. Military Training Leave
6. Miscellaneous Leaves: Personal; Union Duty

Please contact your supervisor, Director of Administration (DOA) or division designated leave administrator to submit an electronic form on your behalf. Note: All GWOT leaves must be submitted by the Military Leave Administrator (MLA). As an option, you may choose to complete a paper form, turn it in to a supervisor, DOA or leave administrator who will in-turn submit the form electronically. Paper copies are available in the BNSF Corporate Forms drawer under Human Resources or at the following link: http://bnsfweb.bnsf.com/departments/corpsupport/FORMS

Any questions pertaining to the leave of absence process should be directed to your immediate supervisor or Director of Administration.

--------------------------------------------------------------------
C1. Return from Leave

In the event of a return from medical leave of absence, instructions on returning to service will be provided along with an approved copy of the leave of absence.

Employees who have not performed service in the last six months must see their supervisor prior to performing any service, as back-to-work requirements (GCOR testing, drug test, etc.) must be met before being allowed to mark up.

--------------------------------------------------------------------
C2. Leave Extensions and Failure to Return

Extending Leave of Absence
--------------------------
Employees are expected to mark up for duty by the LOA end date. If for any reason you are unable to report for duty, you must request a leave extension. In the case of medical leave extensions, a new physician statement is required to support the need for the extension. Extension requests must be made in time to permit action by the supervisor prior to the expiration of the leave.

Failure to Report for Duty by End Date of LOA
---------------------------------------------
Failure to report for duty on or before the expiration date of the leave of absence, unless application for extension has been approved, will be considered absent without authority and may be grounds for termination.

Additionally for former road SLSF: If you are absent without leave in excess of 30 days, forfeiture of all seniority will occur in concurrence with schedule rule.

Additionally for former road HBT: If you fail to report for duty at the expiration of your written leave of absence, you will forfeit all seniority in concurrence with schedule rule.

--------------------------------------------------------------------
C3. Medical Leaves for Illness, Off-Duty and On-Duty Injury Medical Leaves

Time on medical leave will count toward any unused FMLA leave.

Medical Provider Statement
--------------------------
Employees must provide a medical provider statement on the provider's letterhead to their supervisor, Director of Administration or designated leave administrator prior to the effective date of the leave or as soon as possible if leave is due to a medical emergency. If you are confined to a hospital, you must present a physician's statement upon release from the hospital to support the period of confinement and additional required time off.

The statement should indicate the inability to perform service, the begin date of illness/injury and the estimated duration of the leave. For

D000284
Case 4:16-cv-01013-GAF   Document 31-2   Filed 06/16/17   Page 10 of 106

illness or off-duty injuries, the medical provider statement should NOT include medical information in order to protect employee's privacy.

### Returning to work following an Illness or Off-Duty Injury
------------------------------------------------------------

All employees are responsible to coordinate with their medical provider to ensure their personal medical conditions do not interfere with their ability to safely perform their duties. Employees who have been off work on a medical leave of absence with a medical condition that may adversely affect their ability to work safely, as explained in the Return to Work Instructions, must be reviewed for fitness-for-duty by the Medical and Environmental Health Department (MEH) before returning to work from a medical leave of absence.

Depending upon the duration of the leave and the type of medical condition, one of two return to work forms (Medical Status Form or Return to Work Short Form) must be completed prior to returning to work. There is a link to the return to work forms and instructions within the electronic Leave of Absence form. These documents should be printed when the Leave of Absence form is initially submitted or may be accessed through:
* Web link
  http://bnsfweb.bnsf.com/departments/hr/medical/pdf/RTW.pdf
* BNSF Intranet, select the "Departments" tab, then "Medical", in the "Forms" channel, click on "Return to Work"
* Your supervisor, Field Manager MEH, division Director of Administration or designated leave administrator.

Medical Status Form:
  Employees returning to work from a medical leave of absence following a medical condition that may adversely affect their ability to work safely must complete a Medical Status Form to have their condition reviewed to ensure they are able to perform their job duties safely. Return to work instructions contain examples of conditions that require review for fitness-for-duty. The fully completed and signed form must be faxed directly to the fax number located at the top and bottom of the form. Do not send this form to BNSF leave administrator. This form can only be processed by faxing it to the number indicated on the form.

Return to Work Short Form:
  Employees returning to work from a medical leave of absence following a medical condition that does not affect their ability to work safely must complete and sign the Return to Work Short Form (Return to Work for Medical Conditions not Requiring Medical Review). This form should be returned to your supervisor, division Director of Administration or designated leave administrator.

### Returning to work following an On-Duty Injury Medical Leave
------------------------------------------------------------

Employees must work with the appropriate Field Manager MEH. The Field Manager MEH will communicate that you have been cleared to return to work through the Fitness for Duty Recommendation process.

------------------------------------------------------------

### C4. Military Leaves

D000285



Exhibit A

Global War on Terror (GWOT)
---------------------------------
Includes:  Operation Enduring Freedom
           Operation Noble Eagle
           Operation New Dawn (previously Operation Iraqi Freedom)

In order to properly process a Global War on Terror military leave, a copy of your orders and a recent leave and earnings statement (LES) must be faxed to 817-352-7453 or emailed to MilitaryLeaves@BNSF.com. You must contact the MLA directly at 817-352-2034, as the MLA will submit the electronic leave of absence form on your behalf.

You will be given the opportunity to retain or cancel health & welfare coverage while on military leave.  Should your military orders be extended beyond the original end date, it is imperative that you contact the MLA to provide updated orders and a current LES to avoid disruption in pay and benefit coverage.

Military (Other than GWOT)
---------------------------------
There are two separate forms for military service other than GWOT: one which covers National Guard, drill, or state emergency activations, and a second which covers enlistment, miscellaneous training, and military service other than GWOT. Per BNSF policy, employees are eligible for up to 15 days of make whole pay during a calendar year and an additional 10 working days for State Emergencies. To receive this pay, the employee must submit a 1B special ticket for CA 83 and note the ticket number on your leave and earnings statement (LES). Then fax the LES to 785-676-5186. If there are any questions about make whole pay, you will need to submit an Ask Comp question or call 785-676-5197.

--------------------------------------------------------------------------
C5. Miscellaneous Leaves (Personal and Union Duty)

Personal
---------
Employees may request a formal leave of absence for circumstances of a long-term, personal nature.  Personal leaves must be approved by the Division General Manager's office.

Union Duty
-----------
Employees requiring leave for service as a union officer should use the Misc Leave form.


GENERAL NOTICE(S) IN EFFECT
========================================================================
| 1,3,9,12,26,35,37,46,48,53,61,63-64,69-73                              |
========================================================================

### 1.13 Reporting and Complying with Instructions

Employees will report to and comply with instructions from supervisors who have the proper jurisdiction. Employees will comply with instructions issued by managers of various departments when the instructions apply to their duties.

### 1.14 Employee Jurisdiction

Employees are under the jurisdiction of the supervisors of the railroad they are operating on.

When operating on another railroad, unless otherwise instructed, employees will be governed by:

- Safety rules, air brake and train handling rules, and hazardous materials instructions of the railroad they are employed by.
- The operating rules, timetable and special instructions of the railroad they are operating on.

### 1.15 Duty - Reporting or Absence

Employees must report for duty at the designated time and place with the necessary equipment to perform their duties. They must spend their time on duty working only for the railroad. Employees must not leave their assignment, exchange duties, or allow others to fill their assignment without proper authority. Continued failure by employees to protect their employment will be cause for dismissal.

### 1.16 Subject to Call

Employees subject to call must indicate where they can be reached and must not be absent from their calling place without notifying those required to call them.

### 1.17 Hours of Service Law

Employees must be familiar and comply with the requirements of the federal hours of service law. Employees are expected to use off-duty time so they are prepared for work.

If an employee is called to report for duty before legal off-duty time has expired, before accepting the call to work, the employee must notify the individual making the call that off-duty time has not expired.

**A. Notification**

When communication is available, employees must notify the train dispatcher or another authority of the time the law requires them to be off duty. Employees must provide notification early enough that they may be relieved, or transportation provided, before they exceed the hours of service.

**B. Exceeding the Law**

Employees must not exceed the hours of service law without proper authority. However, they must not leave trains, engines, or cars on the main track without proper protection. Employees must secure trains properly and, if possible, before they exceed the hours of service. Except as provided by this paragraph, employees are then relieved of all duties.

### 1.18 Unauthorized Employment

Employees must not engage in another business or occupation that would create a conflict of interest with their employment on the railroad or would interfere with their availability for service or the proper performance of their duties.



DEFENDANT'S DEPOSITION EXHIBIT
5
5-1-17mp
PENGAD 800-631-6989

3.  If the manager making the final decision concludes that the challenged directive would not cause the employee to violate any requirement of the involved rules, the reviewing manager's decision shall be final and not subject to further immediate review.

    •  The manager will inform the employee that Federal law may protect the employee from retaliation, if the employee's refusal to do the work is a lawful, good faith act.

    •  The employee making the challenge will be afforded an opportunity to document, in writing or electronically, any protest to the manager making the final decision before the employee's tour of duty is complete. The employee will be afforded the opportunity to retain a copy of the protest.

D.  **Request for Review and Verification of Decision**

Upon written request, at the time of the challenge, the employee has the right for further review by the "Designated Review Manager". Within 30 days after the expiration of the month during which the challenge occurred, the "Designated Review Manager" will verify the proper application of the rule in question. The verification decision shall be made in writing to the employee.

E.  **Employee Rights and Remedies**

The Good Faith Challenge is not intended to abridge any rights or remedies available to the employee under a collective bargaining agreement or any Federal law.

## 1.5    Drugs and Alcohol

The use or possession of alcoholic beverages while on duty or on company property is prohibited. Employees must not have any measurable alcohol in their breath or in their bodily fluids when reporting for duty, while on duty, or while on company property.

The use or possession of intoxicants, over-the-counter or prescription drugs, narcotics, controlled substances, or medication that may adversely affect safe performance is prohibited while on duty or on company property, except medication that is permitted by a medical practitioner and used as prescribed. Employees must not have any prohibited substances in their bodily fluids when reporting for duty, while on duty, or while on company property.

## 1.6    Conduct

Employees must not be:

1.  Careless of the safety of themselves or others.

2.  Negligent.

3.  Insubordinate.

4.  Dishonest.

5.  Immoral.

6.  Quarrelsome.

    or

7.  Discourteous.

Any act of hostility, misconduct, or willful disregard or negligence affecting the interest of the company or its employees is cause for dismissal and must be reported. Indifference to duty or to the performance of duty will not be tolerated.



DEFENDANT'S DEPOSITION
EXHIBIT
6
*5-1-17mP*

D000269

# Policy for Employee Performance Accountability





DEFENDANT'S DEPOSITION
EXHIBIT
7
5-17mp
PENGAD 800-631-6989

# Policy for Employee Performance Accountability
Effective February 1, 2013

## Statement of Principles

Our vision is to realize the tremendous potential of BNSF by providing transportation services that consistently meet our customers' expectations. By working together, we at BNSF can realize this vision. As a member of the BNSF community, each of us also has the right to work safely and the responsibility to ensure a safe operation for ourselves, our co-workers, our customers and the communities we serve.

This Policy for Employee Performance Accountability (PEPA) supports BNSF's vision of becoming injury and accident free by encouraging all employees to demonstrate safe work behaviors and ensure a safe work environment.

Rules compliance is essential to a safe operation, and we expect everyone at BNSF to consistently comply with our safety and operating rules. For those rare cases where an employee shows a marked disregard for BNSF rules, procedures and safety, this Policy provides a process to enforce BNSF and federal safety requirements.

This Policy is intended to address rule and policy violations in a consistent and fair manner so that every member of the BNSF community has an equal opportunity to achieve his or her full potential.

## General Information

1. If this Policy conflicts with BNSF's other policies, guidelines or agreements, they may take precedence over this Policy.

2. Craft specific attendance requirements are governed by departmental policies and guidelines.

3. A record suspension is only recorded on an employee's personal record; it is not actually served. If warranted, an actual suspension can be imposed.

4. The review periods described in this Policy begin on the date discipline is assessed.

Note: Only time in service is credited toward a review period.

2

D000476

## Policy for Employee Performance Accountability
Effective February 1, 2013

### Categories of Discipline

### I. Standard Violations

A Standard violation is a violation which does not subject an employee or others to potentially serious injury or fatality and does not meet other criteria for a Serious or a Stand Alone Dismissible violation, as provided herein. An employee may be subject to dismissal for a pattern of Standard violations described below.

### A. Progression:

Standard violations will be progressed as follows:

- The first Standard violation will result in a formal reprimand with a 12 month review period (as described below).
- A second, third and fourth Standard violation within the 12 month review period will result in record suspensions of 10, 20, and 30 days, respectively. A fifth Standard violation (or fifth violation of any kind, including violations of departmental attendance guideline policies) committed in the 12 month review period may result in dismissal.

### B. Review Period:

The review period for a Standard violation begins on the date discipline is assessed and expires 12 months later. As noted, a fifth Standard violation (or fifth violation of any kind) committed in the 12 month review period may result in dismissal.

> **Example**: Assume an employee commits a standard violation on January 10, 2013, and the discipline is assessed on January 25, 2013. Assume the employee commits 3 more standard violations in 2013 (e.g. one in March, one in April, and one in May). Finally, assume the employee commits a 5th standard violation on January 20, 2014. The employee *would stand for dismissal* under this example because he/she *committed the 5th violation during the 12 months following the assessed discipline date of the first violation above*, January 25, 2013.
>
> By contrast, assume the 5th violation in the example above wasn't committed on January 20, 2014, but rather was committed 10 days later on January 30, 2014. In this instance, the employee *would not stand for dismissal* because the first standard violation review period had expired 5 days earlier, on January 25, 2014 (i.e. 12 months from the assessed discipline date of January 25, 2013).

3

# Policy for Employee Performance Accountability
Effective February 1, 2013

## II. Serious Violations

A non-exhaustive list of Serious violations is provided in Appendix A.

### A. Progression:

The first Serious violation will result in a 30-day record suspension and a review period of 36 months. Exception: Employees qualify for a reduced review period of 12 months if they demonstrate a good work record, defined as having at least 5 years of service and having been discipline-free during the five years preceding the date of the violation in question.

A second Serious violation committed within the applicable review period may result in dismissal.

### B. Review Period:

The review period for a Serious violation begins the date the discipline is assessed and expires after 36 months of service (or 12 months if qualifying as referenced above).

> Example: An employee commits a Serious violation on January 1, 2013, and is issued a Level S 30-day record suspension with a three year review period on February 1, 2013. Under this scenario, the review period would run to February 1, 2016. However, if the employee takes a one year leave of absence (from January 1, 2014 to December 31, 2014), the Serious violation review period would run to February 1, 2017, since only time in service is credited towards completion of the review period.

## III. Stand Alone Dismissible Violations

A non-exhaustive list of Stand Alone Dismissible violations is provided in Appendix B; the violations identified in Appendix B may result in immediate dismissal.

## Discipline Review

Supervisors must consult with the Director of Employee Performance prior to issuing a dismissal, actual suspension, or deviation from this Policy. Such cases will be reviewed by senior team leaders as part of BNSF's PEPA Review Board.

4

D000478

# Policy for Employee Performance Accountability
Effective February 1, 2013

## Appendix A

The following is a non-exhaustive list of Serious Violations.

**Serious Violations**

1) Violation of any work procedure that is designed to protect employees, the public and/or others from potentially serious injury(ies) and fatality(ies). Many of the Serious violations are identified in the various departmental policies, including but not limited to, Telecom's Essentials, Engineering's Critical Decisions, Mechanical's Safety Absolutes and TY&E's Deadly Decisions

2) Operating rule violation for which FRA decertification is also mandated (also considered a Serious violation for ground crew, if applicable)

3) First violation of Rule 1.5 (former Rule G) [subject to conditional suspension, pending EAP evaluation, as described in BNSF's drug and alcohol policy]

4) Unauthorized absence

5) Tampering with safety devices

6) EEO policy infractions

7) Failure to timely report a DWI conviction (where required to do so)

8) Late reporting of accident or injury. Note: Employees will not be disciplined for "late reporting" of muscular-skeletal injuries, as long as the injury is reported within 72 hours of the probable triggering event, the employee notifies the supervisor before seeking medical attention, and the medical attention verifies that the injury was most likely linked to the event specified.

D000479

## Policy for Employee Performance Accountability
Effective February 1, 2013

### Appendix B

The following is a non-exhaustive list of violations which may result in immediate dismissal.

**Stand Alone Dismissible Violations**

1) Theft or any other fraudulent act, which may be evidenced by the intent to defraud BNSF or by the taking of BNSF monies or property not due

2) Dishonesty about any job-related subject including, but not limited to, falsification or misrepresentation of an injury, abuse of FMLA and/or other leave privileges

3) Conduct leading to a felony conviction. This includes any plea of guilty, deferred adjudication, and/or any plea which results in a felony conviction where sentencing is delayed or suspended, or the felony conviction is subsequently modified or reduced.

4) Refusal to submit at any time to required testing for drug or alcohol use, adulteration of sample, second violation of Rule 1.5 (former Rule G), second positive test within 10 years, or failure to comply with instructions of the Medical Director

5) Violence in the workplace or instigation of a serious altercation. This includes possession of weapons and the threat of using weapons.

6) Conscious or reckless indifference to the safety of themselves, others or the public; indifference to duty; intentional destruction of company property; malicious rule violation; insubordination

7) Rule violation that could result in serious collision and/or derailment, serious injury to another employee or the general public, fatality, or extensive damage to company or public property

8) Extended unauthorized absence

9) Aggravated EEO policy infractions

10) Failure to report accident or injury

11) Multiple Serious violations committed during the same tour of duty

6



Brandon Ogden
Director of Administration
Springfield Division

BNSF Railway Company
3253 East Chestnut Expressway
Springfield, MO 65802
PH: 417-829-2102
FX: 417-829-3942
brandon.ogden@bnsf.com

July 21, 2011

Certified Mail: 7010 1060 0001 3044 8456

Employee # 1550813
F A Oropeza
2709 Eaton Street
Kansas City, KS 66103

Dear Mr. Oropeza,

You have been granted a Family Medical Leave of Absence under Family/Medical Leave Act of 1993. This leave was granted for your family member's medical condition. Medical certification was required from your health care provider before you qualified for your FMLA leave. Medical information provided by your health care provider was personal and confidential and the reason for granting the leave is unknown to this office.

Mr. Oropeza, your approved FMLA allows you to lay off work (1 absence per week for appointments only). You laid off FMLA more than 1 day per week in both May and June 2011, which exceeded your allotment.

The purpose of this letter is to further communicate the carrier's expectations regarding your continued FMLA usage. Given the nature of your FMLA usage, BNSF is monitoring the situation closely. Please let Human Resources know if there is any reason that your pattern of usage has exceeded your FMLA restrictions. If your medical condition has changed you must update your FMLA by providing an updated Health Certification (copy of form enclosed) to the HR Benefits Processing Team, as indicated on the application. If your medical condition has not changed, you must comply with your approved FMLA restrictions or you may be subject to disciplinary action.

Respectfully,

Brandon Ogden

Brandon Ogden
Director of Administration

cc:     Personnel Records
        TransSupport
        Alden Jenkins, Supt. of Operations



DEFENDANT'S DEPOSITION
EXHIBIT
PENGAD 800-631-6989
51-17mp

RECEIVED

AUG 3 1 2011

BNSF PERSONNEL RECORDS
BNSF 002225

Jun. 1. 2012 3:14PM                               No. 3190    P. 1

**BNSF RAILWAY**

BNSF Railway Company          2600 Lou Menk Drive, AOB-OL
HR BENEFITS PROCESSING TEAM   Fort Worth, TX 76131-2826
                              Toll Free: (800) 234-1283
                              Phone: (817) 593-6400
                              Fax: (817) 352-3672

## CERTIFICATION OF HEALTH CARE PROVIDER – FAMILY AND MEDICAL LEAVE
### Family and Medical Leave Act of 1993

Health Care Provider: *PLEASE ANSWER ALL QUESTIONS.* If the question doesn't apply, please indicate "N/A".
Failure to fully complete this form will result in a denial of the employee's request for leave.

PLEASE DO NOT RETURN THIS FORM TO THE EMPLOYEE. PLEASE FAX FROM YOUR OFFICE TO:
BNSF RAILWAY, HR BENEFITS PROCESSING TEAM
FAX NUMBER: (817) 352-3672

To be eligible for Family or Medical Leave under the Family and Medical Leave Act of 1993 (FMLA), one of the following must apply:

**Family Leave:** Is for the birth, adoption, or placement of a foster child in the home. For a Family Leave, please complete sections 1 through 3, 4e, and 9 below.

**Medical Leave:** Is for an employee's own "Serious Health Condition" (see attached definitions) or for the "Serious Health Condition" of the employee's spouse, parent, child under the age of 18, or permanently disabled child over the age of 18. For a Medical Leave, please complete all applicable sections below.

PLEASE PRINT

| 1. Employee's Name | 2. Patient's Name (if different from employee) |
|---|---|
| *Fred Oropeza* | *Carol Oropeza* |

3. Describe the medical facts regarding the serious health condition for which leave is requested. The medical facts must be sufficient to support the need for leave. Include information on symptoms and the actual diagnosis:

*Dystonia – chronic illness which required deep brain stimulators to be placed, 09/2011 Now having program-ming of stimulators requiring up to 12 visits in 1st year.*

4a. State the approximate date the patient's condition began: Month *01* Day *22* Year *2008*

How long do you think the condition may last? Days ☐  Weeks ☐  Months ☐  Lifetime ☒

If presently incapacitated, how long do you think the patient's present incapacity* may last?
Number of: _____ days; _____ weeks; _____ months *unkre*

*"Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom.

4b. Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?

YES ☒          NO ☐

If you ☒ YES, please state the dates of admission: *9/19 + 9/27/2011*

Revised 01-2011

DEFENDANT'S DEPOSITION
EXHIBIT
*9*
PENGAD 800-631-6989

Case 4:16-cv-01013-GAF   Document 31-2   Filed 06/19/17   Page 22 of 106          D000101

No. 3190    P. 3

Jun. 1. 2012  3:15PM

4c. Dates you treated the patient for the serious health condition: 10/19/11, 10/20/11, 11/03/11, 11/30/11, 12/29/11

4d. Was medication, other than over-the-counter medication, prescribed? YES ☐ NO ☐   12/28/11, 02/29/12

4e. Is the medical condition pregnancy? YES ☐ NO ☐   If you ☑ YES, expected delivery date: 03/02/12

09 /0/12

**AMOUNT OF CARE NEEDED BECAUSE OF THE SERIOUS HEALTH CONDITION:** When completing Section 5, keep in mind that your patient's need for care by the employee seeking leave may include assistance with basic medical, hygiene, nutritional, and safety needs as well as transportation to and from a health care provider and the provision of physical or psychological care.

5a. Will the patient be incapacitated for a single continuous period of time, including any time for treatment and recovery? YES ☑ NO ☐

If ☑ YES, estimate the beginning and ending dates for the period of incapacity: _____

If the leave is requested for the care of a family member: During this time, will the patient need care from the employee or another person? YES ☑ NO ☐

If the leave is requested for the care of a family member: Describe the care needed by the patient from the employee or another person and why such care is medically necessary:

*Driving while under anthesia — his mother.*
*Multiple office visit - mother does not drive*
*Patient needs support + another person to hear*
*education aspects for deep brain stimulates*
*Teaching & learning - assist mom due to disease*

5b. Will the patient require follow-up treatment, including any time for recovery? YES ☑ NO ☐

If you ☑ YES, estimate the treatment schedule, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period: *July 17, 2012 C(r:0) ✓*
*Sept 26, 2012 C(r)ES then every 6 months Threaft*

Will the patient need care from the employee or another person as a result of the follow-up treatment?
YES ☑                                      NO ☐

If so, describe the care needed by the patient from the employee or another person and why such care is medically necessary: *Reminders of medications, assist with*
*cooking, laundry, housework, appointment*
*to doctors*

5c. Will the patient require care from the employee or another person on an intermittent or reduced-schedule basis, including any time for recovery? YES ☑ NO ☐

If you ☑ YES, estimate the hours the patient needs care from the employee or another person on an intermittent basis:

    8    hour(s) per day;   1   days per week from 5/29/12 through _indefinate_

Revised 01-2011

Exhibit A

~~Describe the care needed by the patient from the employee or another person and why such care is medically~~
~~necessary:~~ *transporting for mother, monitor medication*
*assist home, fall prevention*

5d. Will the condition cause episodic flare-ups periodically preventing the patient from participating in normal daily
activities? YES ☑                    NO ☐

If so, based on the patient's medical history and your knowledge of the medical condition, estimate the frequency of
flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., one
episode every three months lasting one to two days).

Frequency: ___ times per ___ week(s) ___ month(s) *indefinitely*

Duration: _4_ hours or ___ day(s) per episode                         *maybe*

Will the patient need care from the employee or another person during these flare-ups? YES ☑ NO ☐

If so, describe the care needed by the patient from the employee or another person and why such care is medically
necessary: *Supervision of medication pd care*
*management with best suit risk, assistive*
*with mental/emotion needs of chronically*
*ill mother*

## FOR MEDICAL LEAVE FOR EMPLOYEE'S OWN SERIOUS HEALTH CONDITION:

6a. If this form is for the employee's own condition and absence from work is required (including absences due to
pregnancy or a chronic condition), are there specific job duties the employee is unable to perform?

                    YES ☐                              NO ☐

If ☑ YES, please specify any restriction: _____

6b. If able to perform some work, is the employee unable to perform any one or more of the essential
functions of the employee's job (the employee or the employer should supply you with information about the
essential job functions)?              YES ☐                    NO ☐

If you ☑ YES, please list the essential functions the employee is unable to perform: _____

If you ☑ YES, how long do you think the employee will be unable to perform any one or more of the essential
functions of the employee's job?

6c. If you ☑ check NO to both 6a. and 6b. above, is it necessary for the employee to be absent from work for
treatment? YES ☐                    NO ☐

Revised 01-2011                                                                        3

No. 3190    P. 4

Jun. 1. 2012  3:15PM

**FOR MEDICAL LEAVE FOR A FAMILY MEMBER:**

7a. If leave is required to care for the employee's family member with a serious health condition;

    1. Does the patient require assistance for basic medical, hygienic, or nutritional needs or safety? YES ☒  NO ☐

    2. Is the patient unable to transport himself or herself to the doctor? YES ☒  NO ☐

7b. If NO to both 1 and 2 above, would the employee's presence to provide psychological comfort or reassurance be beneficial to the patient or assist in the patient's recovery?  YES ☐  NO ☐

**REGIMEN OF TREATMENTS:**

8a. If treatments will be required for the patient's condition, provide an estimate of the number of such treatments

    ☑ 7 # treatments ☐ per week; ☐ per month; ☐ per year; over what period  1 yr . approx
    (# of weeks/months)

8b. If any of these treatments will be provided by another provider of health services (other than yourself), (e.g., physical therapist), please state the nature of the treatments:

    Physical therapy

8c. Please provide a general description of the regimen of continuing treatment (e.g., prescription drugs, physical therapy requiring special equipment):

    ☑ Prescription medication(s): Drugs , P.T , MD, Psychologist
    ☐ Other therapy:

**EMPLOYEE TIME AWAY FROM WORK:**

9a. YES ☒ NO ☐  Will it be necessary for *our BNSF employee* to be absent from work due to the patient's treatment?

9b. CONTINUOUS ABSENCE: If all or a portion of the absence will be continuous, please provide:
    Beginning Date  09/2011    Estimated End Date  indefinitely

9c. INTERMITTENT ABSENCE: If absence is intermittent, will it be necessary for *our BNSF employee* to be away from work occasionally (intermittently) or to work less than full schedule?  YES ☒  NO ☐

    If yes, please provide the approximate frequency of absences our employee will need:
    (1) # absences per  wk  (For example: 3 absences per month)  4/mth max
    (number)       (week, month, or year)

9d. Will absence be necessary on weekends? YES ☐  NO ☒
9e. If Intermittent Leave, please provide the approximate duration of each absence that the employee will need:

| Appointments only ☐ | < one day ☐ | 1 day ☐ | 1-2 days ☐ | 2 days ☐ | 2-3 days ☐ | 3 days ☐ |
| 3-4 days ☒ | 4 days ☐ | 4-5 days ☐ | 5 days ☐ | 5-6 days ☐ | 6 days ☐ | 6-7 days ☐ | 7 days ☐ |

Other ☐ - Please be specific

Richard Dubinsky

Richard Dubinsky          MD, MPH
Printed Name of Health Care Provider and Degree    Signature         05/23/12
    688-6996          Date

Neurology
Type of Practice              Telephone Number

3599 Rainbow Blvd             KC        KS      66160
Street Address               City       State    Zip Code

Revised 01-2011                      4

D000104

Jun. 1. 2012 3:16PM                                    No. 3190   P. 5

TO BE COMPLETED BY THE EMPLOYEE REQUESTING LEAVE TO CARE FOR A FAMILY MEMBER:

Describe the care you will provide to your family member and estimate the leave needed to provide such care, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_Employee Signature_                    05/23/10
                                        _Date_

Employee Acknowledgment and Certification: By my signature above, I acknowledge that I understand that if I do not timely submit a complete and sufficient certification, BNSF may delay or deny the leave, continued leave, or restoration to employment, treat my absence as unexcused, and impose appropriate disciplinary action, up to and including termination of employment. I further understand that if I make any false or misleading oral or written statement in connection with my request for leave, I will be subject to appropriate disciplinary action, up to and including termination of employment.

PLEASE DO NOT RETURN THIS FORM TO THE EMPLOYEE. PLEASE FAX FROM YOUR OFFICE TO:

BNSF RAILWAY, HR BENEFITS PROCESSING TEAM

FAX NUMBER: (817) 352-3672

Revised 01-2011                                           5

Exhibit A

 **HR BENEFITS PROCESSING TEAM**

BNSF Railway Company
P.O. Box 961055
Fort Worth, TX 76161-0055
2500 Lou Menk Drive, AOB-GL
Fort Worth, TX 76131-2828
Toll Free: (800) 234-1283
Phone: (817) 593-6400
Fax: (817) 352-3612

June 5, 2012

FRANK A. OROPEZA
1204 NE 73RD ST
GLADSTONE, MO 64118

RE: Approval and Designation of FMLA Leave - *Medical Leave (mother)*

Dear Frank Oropeza:                                    Emp Id # 1550813

On **05/24/2012** we received your request for **Intermittent Leave** under the Family and Medical Leave Act (FMLA) *for Medical Leave.* Your request was based on your own serious health condition or the serious health condition of your child, parent, or spouse.

Your request for Intermittent Leave is approved and the dates approved are 05/24/2012 through 05/23/2013. Note that you may be required to obtain an updated Certification of Health Care Provider form from your provider within six months from your approval date, or earlier as permitted by the FMLA regulations if so notified in writing. All leave taken for this reason will be designated as FMLA leave.

The healthcare provider indicated you may need 1 absence per week; duration 1 day per absence (weekend days unlikely).

Please be aware that as a TY&E employee your FMLA allocation is in hours. You should be aware of your allocation balance at all times, and allocation calendar which may differ from your application approval dates listed above.

The FMLA requires that you notify BNSF as soon as practicable if dates of scheduled leave change or are extended or were initially unknown. After your leave begins you have the right to request information regarding your FMLA leave balance once every 30 days. Please direct any such request to the HR Benefits Processing Team.

**Additional Rights and Responsibilities for Taking FMLA Leave**

You will have the following responsibilities while on FMLA leave:

- You must provide at least 30 days' advance notice of the need to take FMLA leave when the need for leave is foreseeable (such as for planned medical treatment) or as soon as practicable if 30 days' notice is not possible. When the need for leave is unforeseeable, you must provide notice as soon as practicable. In such instances, it will generally be considered practicable for you to provide notice of the need for leave within the time and in accordance with the applicable procedures and policies for requesting time away from work. Failure to provide the required notice may result in denial of FMLA leave.



DEFENDANT'S DEPOSITION EXHIBIT
ID

BNSF will continue its contribution toward your health and welfare benefits during the leave. Your share of the premium payments on your health and wealth benefits will continue to be deducted from your regular pay.

- If you do not return to work following FMLA leave for a reason other than (1) the continuation, recurrence, or onset of a serious health condition that would entitle you to FMLA leave; (2) the continuation, recurrence, or onset of a covered service member's serious injury or illness that would entitle you to FMLA leave; or (3) other circumstances beyond your control, you may be required to reimburse BNSF for its share of health insurance premiums paid on your behalf during your FMLA leave.

- *If circumstances change during the leave, it is your responsibility to contact the treating health care provider and have him/her fax updated information to the HR Benefits Processing Team at 1-817-352-3672. The HR Benefits Processing Team can also be reached by calling 1-800-234-1283 or Company line 8-593-6400.*

You also have the following rights while on FMLA leave:

- You have a right under the FMLA for up to 26 weeks of unpaid Service Member Leave or 12 weeks of Family, Medical or Exigency Leave in a single 12-month period. The "single 12-month period" begins on the first day you take FMLA and ends 12 months after that date. Note, however, that once a Service Member Leave is approved, any Medical Leave, Family Leave or Exigency Leave you take will count toward your 26 weeks of Service Member Leave and any Service Member Leave you take will count toward your 12 weeks of Family, Medical or Exigency Leave.

- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.

- You must be reinstated to the same or an equivalent position with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. If your leave extends beyond the end of your FMLA entitlement, you do not have reinstatement rights under the FMLA.

- You are not a "key" employee as described in the FMLA regulations. As a result, reinstatement may not be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to BNSF.

- If you are a salaried employee and are taking Medical Leave for yourself or your parent, spouse, or child, you will be required to substitute any accrued sick leave for any portion of your unpaid Medical Leave.

- If you are a scheduled employee, you will be required to substitute any accrued sick leave if you are taking Medical Leave for your own serious health condition or if your collective bargaining agreement otherwise would permit use of sick leave.

- You have the right to have any paid leave (e.g., personal days, vacation, sick leave) run concurrently with your unpaid Medical Leave, provided you meet any applicable requirements of the leave policy. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid Medical Leave.

- If you choose to substitute paid leave during your Medical Leave, substitution will happen in the following order, as applicable: (i) sick leave; (ii) unscheduled comp time; (iii) unscheduled personal leave; (iv) unscheduled vacation; (v) scheduled comp time; (vi) scheduled personal leave; and (vii) scheduled vacation. Contact your appropriate timekeeper if you wish to substitute any paid leave for which you may be eligible for unpaid Medical Leave.

Sincerely,

*HR Benefits Processing Team*

**CERTIFIED MAIL #** 7011 3500 0000 4126 2437

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®.

OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark Here

7011 3500 0000 4126 2437

Sent To

Street, Apt. No.; or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006    See Reverse for Instructions

**BNSF** RAILWAY

GREG D. WRIGHT
Director Administration

NEBRASKA DIVISION

BNSF Railway Company

201 N. 7th Street
Lincoln, Nebraska 68508

Phone: 402-458-7596
FAX: 402-458-7769

CERTIFIED MAIL 91 7199 9991 7031 7578 1308
RETURN RECEIPT REQUESTED

September 24, 2012

Frank A. Oropeza
EN: 1550813
1204 NE 73rd ST
Gladstone, MO 64118

Dear Mr. Oropeza,

You have been granted a Family Leave under Family/Medical Leave Act of 1993. Medical certification was required from your health care provider before you qualified for your FMLA leave. Medical information provided by your health care provider was personal and confidential and the medical condition underlying for FMLA leave is unknown to this office. Your medical provider did indicate you should have one (1) absence per week with one (1) day duration, and unlikely weekend layoffs between May 24, 2012 through May 23, 2013.

I am attaching a document listing the dates you have laid off FMLA. Records indicate you have taken more than the recommended absences. Between the months of July 11, 2012 and August 24, 2012, you laid off FMLA thirteen (13) times with eight (8) of these layoffs on the weekend, and between the months of July 28, 2012 and August 4, 2012, you laid off two (2) times. These layoffs exceed your allotment, and your pattern of leave is inconsistent with physician-recommended leave requirements.

Given the nature of your FMLA usage, BNSF is monitoring the situation closely. If your medical condition has changed you must bring up to date your FMLA by providing an updated Health Certification (copy of form enclosed) and re-submit to HR Benefits Processing Team as indicated on the application. If your medical condition has not changed, you must comply with your approved FMLA restrictions or you may be subject to disciplinary action.

Sincerely,

Greg D. Wright
Director of Administration

Cc: Personal Records
TransSupport
Supt. Operations

Enclosure

DEFENDANT'S DEPOSITION EXHIBIT
11
5-1-17 mjo
PENGAD 800-631-6989

835PIb1.dot

Exhibit A

# BNSF
## RAILWAY

**BNSF Railway Company**
HR BENEFITS PROCESSING TEAM

2500 Lou Menk Drive, AOB-GL
Fort Worth, TX 76131-2828
Toll Free: (800) 234-1283
Phone: (817) 593-6400
Fax: (817) 352-3672

## CERTIFICATION OF HEALTH CARE PROVIDER – FAMILY AND MEDICAL LEAVE
### Family and Medical Leave Act of 1993

Health Care Provider: _PLEASE ANSWER ALL QUESTIONS. If the question doesn't apply, please indicate "N/A"._
Failure to fully complete this form will result in a denial of the employee's request for leave.

**PLEASE DO NOT RETURN THIS FORM TO THE EMPLOYEE. PLEASE FAX FROM YOUR OFFICE TO:**
BNSF RAILWAY, HR BENEFITS PROCESSING TEAM
FAX NUMBER: (817) 352-3672

To be eligible for Family or Medical Leave under the Family and Medical Leave Act of 1993 (FMLA), one of the following must apply.

**Family Leave:** is for the birth, adoption, or placement of a foster child in the home. For a Family Leave, please complete sections 1 through 3, 4a, and 5 below.

**Medical Leave:** is for an employee's own "Serious Health Condition" (see attached definitions) or for the "Serious Health Condition" of the employee's spouse, parent, child under the age of 18, or permanently disabled child over the age of 18. For a Medical Leave, please complete all applicable sections below.

**PLEASE PRINT**

| 1. Employee's Name | 2. Patient's Name (if different from employee) |
|---|---|
| Fred Oropeza | Carol Oropeza |

3. Describe the medical facts regarding the serious health condition for which leave is requested. The medical facts must be sufficient to support the need for leave. Include information on symptoms and the actual diagnosis:

Dystonia   chronic illness

4a. State the approximate date the patient's condition began: Month _01_ Day ____ Year _2008_

How long do you think the condition may last: Days ☐  Weeks ☐  Months ☐  Lifetime ☒

If presently incapacitated, how long do you think the patient's present incapacity* may last

Number of: _____ days; _____ weeks; _____ months   Unsure

**Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom.

4b. Was the patient admitted for an overnight stay in a hospital, hospice, or residential medical care facility?

YES ☐                    NO ☒

If you ☒ YES, please state the dates of admission: _____

Revised 01-2011

DEFENDANT'S DEPOSITION
EXHIBIT
12

D000088

4c. Dates you treated the patient for the serious health condition:

4d. Was medication, other than over-the-counter medication, prescribed? YES ☑ NO ☐

4e. Is the medical condition pregnancy? YES ☐ NO ☑   If you ☑ YES, expected delivery date:

**AMOUNT OF CARE NEEDED BECAUSE OF THE SERIOUS HEALTH CONDITION:** When completing Section 5, keep in mind that your patient's need for care by the employee seeking leave may include assistance with basic medical, hygienic, nutritional, and safety needs as well as transportation to and from a health care provider and the provision of physical or psychological care.

5a. Will the patient be incapacitated for a single continuous period of time, including any time for treatment and recovery? YES ☑ NO ☐

If ☑ YES, estimate the beginning and ending dates for the period of incapacity:

If the leave is requested for the care of a family member. During this time, will the patient need care from the employee or another person? YES ☑ NO ☐

If the leave is requested for the care of a family member. Describe the care needed by the patient from the employee or another person and why such care is medically necessary:

Driving

5b. Will the patient require follow-up treatment, including any time for recovery? YES ☐ NO ☐

If you ☑ YES, estimate the treatment schedule, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period: Jun 14th 2013

every 6 months thereafter

Will the patient need care from the employee or another person as a result of the follow-up treatment?

YES ☑        NO ☐

If so, describe the care needed by the patient from the employee or another person and why such care is medically necessary: for medication management

5c. Will the patient require care from the employee or another person on an intermittent or reduced-schedule basis, including any time for recovery? YES ☑ NO ☐

If you ☑ YES, estimate the hours the patient needs care from the employee or another person on an intermittent basis:

____ hour(s) per day; _____ days per week from 12/21/12 through Indefinately

2

D000080

Dec. 21. 2012  4:02PM                                    No. 0009   P. 5

Describe the care needed by the patient from the employee or another person and why such care is medically necessary: *Transportation medication monitoring* *management*

6d. Will the condition cause episodic flare-ups periodically preventing the patient from participating in normal daily activities?  YES ☒   NO ☐

If so, based on the patient's medical history and your knowledge of the medical condition, estimate the frequency of flare-ups and the duration of related incapacity that the patient may have over the next 6 months (e.g., one episode every three months lasting one to two days).  *every 3 minutes*

Frequency: ___X___ times per _____ week(s) _____ month(s)

Duration: ___8___ hours or _____ (day(s)) per episode

Will the patient need care from the employee or another person during these flare-ups?  YES ☒   NO ☐

If so, describe the care needed by the patient from the employee or another person and why such care is medically necessary: *Transportation need = mainly*

## FOR MEDICAL LEAVE FOR EMPLOYEE'S OWN SERIOUS HEALTH CONDITION:

6a. If this form is for the employee's own condition and absence from work is required (including absences due to pregnancy or a chronic condition), are there specific job duties the employee is unable to perform?

YES ☐                        NO ☐

If ☑ YES, please specify any restriction:

6b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)?          YES ☑          NO ☐

If you ☑ YES, please list the essential functions the employee is unable to perform: _____

If you ☑ YES, how long do you think the employee will be unable to perform any one or more of the essential functions of the employee's job? _____

6c. If you ☑ check NO to both 6a. and 6b. above, is it necessary for the employee to be absent from work for treatment?  YES ☐          NO ☐

Revised 01-2011                                                                      3

Exhibit A

**FOR MEDICAL LEAVE FOR A FAMILY MEMBER:**

7a. If leave is required to care for the employee's family member with a serious health condition;

   1. Does the patient require assistance for basic medical, hygienic, or nutritional needs or safety? YES ☒ NO ☐

   2. Is the patient unable to transport himself or herself to the doctor? YES ☒ NO ☐

7b. If NO to both 1 and 2 above, would the employee's presence to provide psychological comfort or reassurance be beneficial to the patient or assist in the patient's recovery? YES ☐ NO ☐

**REGIMEN OF TREATMENTS:**

8a. If treatments will be required for the patient's condition, provide an estimate of the number of such treatments _____ # treatments ☐ per week; ☐ per month; ☒ per year; over what period _____ (# of weeks/months)

8b. If any of these treatments will be provided by another provider of health services (other than yourself) (e.g., physical therapist), please state the nature of the treatments:

_Physical Therapy_

8c. Please provide a general description of the regimen of continuing treatment (e.g., prescription drugs, physical therapy requiring special equipment):

  ☒ Prescription medication(s): _Daily, PT, MD, Psychologist_

  ☐ Other therapy: _____

**EMPLOYEE TIME AWAY FROM WORK:**

9a. YES ☒ NO ☐ Will it be necessary for our _BNSF_ employee to be absent from work due to the patient's treatment?

9b. CONTINUOUS ABSENCE: If all or a portion of the absence will be continuous, please provide:

Beginning Date _12/12_     Estimated End Date _indefinitely_

9c. INTERMITTENT ABSENCE: If absence is intermittent, will it be necessary for our _BNSF_ employee to be away from work occasionally (intermittently) or to work less than full schedule?   YES ☐ NO ☐

If yes, please provide the approximate frequency of absences our employee will need:

_____ # absences per _____ (For example: 3 absences per month)
(number)     (week, month, or year)

9d. Will absence be necessary on weekends? YES ☐ NO ☒

9e. If Intermittent Leave, please provide the approximate duration of each absence that the employee will need:

Appointments only ☐   one day ☒   1 day ☐   1-2 days ☐   2 days ☐   2-3 days ☐   3 days ☐

3-4 days ☐   4 days ☐   4-5 days ☐   5 days ☐   5-6 days ☐   6 days ☐   6-7 days ☐   7 days ☐

Other ☐   Please be specific _____

_Richard Dubinsky_      _[Signature]_      _12/21/12_
Printed Name of Health Care Provider and Degree    Signature        Date

_Neurology_       _588-6990_
Type of Practice          Telephone Number

_3599 Rainbow Blvd_    _KC_    _KS_    _66160_
Street Address          City      State    Zip Code

Revised 01-2011

**TO BE COMPLETED BY THE EMPLOYEE REQUESTING LEAVE TO CARE FOR A FAMILY MEMBER:**

Describe the care you will provide to your family member and estimate the leave needed to provide such care, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____                    _____
Employee Signature                                                          Date

**Employee Acknowledgment and Certification:** By my signature above, I acknowledge that I understand that if I do not timely submit a complete and sufficient certification, BNSF may delay or deny the leave, continued leave, or restoration to employment, treat my absence as unexcused, and impose appropriate disciplinary action, up to and including termination of employment. I further understand that if I make any false or misleading oral or written statement in connection with my request for leave, I will be subject to appropriate disciplinary action, up to and including termination of employment.

**PLEASE DO NOT RETURN THIS FORM TO THE EMPLOYEE. PLEASE FAX FROM YOUR OFFICE TO:**

**BNSF RAILWAY, HR BENEFITS PROCESSING TEAM**

**FAX NUMBER: (817) 352-3672**

Revised 01-2011

**BNSF RAILWAY**

HR BENEFITS PROCESSING TEAM

BNSF Railway Company
P.O. Box 961055
Fort Worth, TX 76161-0055
2500 Lou Menk Drive, AOB-GL
Fort Worth, TX 76131-2828
Toll Free: (800) 234-1283
Phone: (817) 593-6600
Fax: (817) 352-3672

December 27, 2012

FRANK A. OROPEZA
1204 NE 73RD ST
GLADSTONE, MO 64118

RE: Family/Medical Leave (FMLA)

Dear Frank Oropeza:          Emp Id # 1550813

On 12/21/2012 we received a current Certification of Health Care Provider regarding your FMLA approval, as requested.

Your approval will remain in place through 05/23/2013. The provider has indicated that you may need 4 absences per year duration 1 day, unlikely weekend absence.
All leave taken for this reason will be designated as FMLA leave.

**Additional Rights and Responsibilities for Taking FMLA Leave**

You will have the following responsibilities while on FMLA leave:

- You must provide at least 30 days' advance notice of the need to take FMLA leave when the need for leave is foreseeable (such as for planned medical treatment) or as soon as practicable if 30 days' notice is not possible. When the need for leave is unforeseeable, you must provide notice as soon as practicable. In such instances, it will generally be considered practicable for you to provide notice of the need for leave within the time and in accordance with the applicable procedures and policies for requesting time away from work. Failure to provide the required notice may result in denial of FMLA leave.
- BNSF will continue its contribution toward your health and welfare benefits during the leave. Your share of the premium payments on your health and wealth benefits will continue to be deducted from your regular pay.
- If you do not return to work following FMLA leave for a reason other than (1) the continuation, recurrence, or onset of a serious health condition that would entitle you to FMLA leave; (2) the continuation, recurrence, or onset of a covered service member's serious injury or illness that would entitle you to FMLA leave; or (3) other circumstances beyond your control, you may be required to reimburse BNSF for its share of health insurance premiums paid on your behalf during your FMLA leave.
- *If circumstances change during the leave, it is your responsibility to contact the treating health care provider and have him/her fax updated information to the HR*

DEFENDANT'S DEPOSITION EXHIBIT

13

BNGAD 000-631-6999

SAMMM

Exhibit A

*Benefits Processing Team at 1-817-352-3672.* The HR Benefits Processing Team can also be reached by calling 1-800-234-1283 or Company line 8-593-6400.

You also have the following **rights** while on FMLA leave:

- You have a right under the FMLA for up to 26 weeks of unpaid Service Member Leave or 12 weeks of Family, Medical, or Exigency Leave in a single 12-month period. The "single 12-month period" begins on the first day you take FMLA and ends 12 months after that date. Note, however, that once a Service Member Leave is approved, any Medical Leave, Family Leave or Exigency Leave you take will count toward your 26 weeks of Service Member Leave and any Service Member Leave you take will count toward your 12 weeks of Family, Medical, or Exigency Leave.
- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.
- You must be reinstated to the same or an equivalent position with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. If your leave extends beyond the end of your FMLA entitlement, you do not have reinstatement rights under the FMLA.
- You are not a "key" employee as described in the FMLA regulations. As a result, reinstatement may not be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to BNSF.
- If you are a salaried employee and are taking Medical Leave for yourself or your parent, spouse, or child, you will be required to substitute any accrued sick leave for any portion of your unpaid Medical Leave.
- If you are a scheduled employee, you will be required to substitute any accrued sick leave if you are taking Medical Leave for your own serious health condition or if your collective bargaining agreement otherwise would permit use of sick leave.
- You have the right to have any paid leave (e.g., personal days, vacation, sick leave) run concurrently with your unpaid Medical Leave, provided you meet any applicable requirements of the leave policy. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid Medical Leave.
- If you choose to substitute paid leave during your Medical Leave, substitution will happen in the following order, as applicable: (i) sick leave; (ii) unscheduled comp time; (iii) unscheduled personal leave; (iv) unscheduled vacation; (v) scheduled comp time; (vi) scheduled personal leave; and (vii) scheduled vacation. Contact your appropriate timekeeper if you wish to substitute any paid leave for which you may be eligible for unpaid Medical Leave.

Please let us know if you have any questions.

Sincerely,

*HR Benefits Processing Team*

CERTIFIED MAIL # 7012 1010 0003 5382 9271

Exhibit A

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | |
|---|---|
| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Postmark
Here

Sent To

Street, Apt. No.;
or PO Box No.

City, State, ZIP+4

PS Form 3800, August 2006          See Reverse for Instructions

1550813  37354


RAILWAY

B29· UA

BNSF Railway Company
HR BENEFITS PROCESSING TEAM

2500 Lou Menk Drive, AOB-GL
Fort Worth, TX 76131-2828
Toll Free: (800) 234-1283
Phone: (817) 593-6400
Fax: (817) 352-3672

## CERTIFICATION OF HEALTH CARE PROVIDER – FAMILY AND MEDICAL LEAVE
### Family and Medical Leave Act of 1993

**Health Care Provider:** _PLEASE ANSWER ALL QUESTIONS_. If the question doesn't apply, please indicate "N/A".
**Failure to fully complete this form will result in a denial of the employee's request for leave.**

PLEASE DO NOT RETURN THIS FORM TO THE EMPLOYEE. PLEASE FAX FROM YOUR OFFICE TO:
BNSF RAILWAY, HR BENEFITS PROCESSING TEAM
FAX NUMBER: (817) 352-3672

To be eligible for Family or Medical Leave under the Family and Medical Leave Act of 1993 (FMLA), one of the following must apply:

**Family Leave:** Is for the birth, adoption, or placement of a foster child in the home. For a Family Leave, please complete sections 1 through 3, 4e, and 9 below.

**Medical Leave:** Is for an employee's own "Serious Health Condition" (see attached definitions) or for the "Serious Health Condition" of the employee's spouse, parent, child under the age of 18, or permanently disabled child over the age of 18. For a Medical Leave, please complete all applicable sections below:

PLEASE PRINT

| 1. Employee's Name ~~Frank~~ | 2. Patient's Name (if different from employee) |
|---|---|
| "Fred" Oropeza | Carol Oropeza |

3. Describe the medical facts regarding the serious health condition for which leave is requested. The medical facts must be sufficient to support the need for leave. Include information on symptoms and the actual diagnosis:

Dystonia - Diagnosis - required deep brain
Stimulators to be placed 09/2011 Programming
visits every 3-4 months Currently

4a. State the approximate date the patient's condition began: Month 01 Day 22 Year 20 08

How long do you think the **condition** may last: Days ☐   Weeks ☐   Months ☐   Lifetime ☑

If presently incapacitated, how long do you think the **patient's present incapacity*** may last

Number of: _____ days; _____ weeks; _____ months

***"Incapacity,"** for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom.

4b. Was the patient admitted for an **overnight stay** in a hospital, hospice, or residential medical care facility?

YES ☐                            NO ☑

If you ☑ YES, please state the dates of admission: _____

PENGAD 800-631-6989

DEFENDANTS DEPOSITION
EXHIBIT
14
Judith S

Revised 01-2011

D000004

planned 7/23/13

4c. Dates you treated the patient for the serious health condition: 4/23/13   8/13/13   10/23/12
10/03/12
07/17/12

4d. Was medication, other than over-the-counter medication, prescribed? YES ☒  NO ☐

4e. Is the medical condition pregnancy? YES ☐  NO ☒  If you ☒ YES, expected delivery date: _____

AMOUNT OF CARE NEEDED BECAUSE OF THE SERIOUS HEALTH CONDITION: When completing Section 5, keep in mind that your patient's need for care by the employee seeking leave may include assistance with basic medical, hygienic, nutritional, and safety needs as well as transportation to and from a health care provider and the provision of physical or psychological care.

5a. Will the patient be incapacitated for a single continuous period of time, including any time for treatment and recovery? YES ☒  NO ☐

If ☒ YES, estimate the beginning and ending dates for the period of incapacity: _____

If the leave is requested for the care of a family member: During this time, will the patient need care from the employee or another person? YES ☒  NO ☐

If the leave is requested for the care of a family member: Describe the care needed by the patient from the employee or another person and why such care is medically necessary:

Driving patient to + from visits.
Hearing explanations of plan of care

5b. Will the patient require follow-up treatment, including any time for recovery? YES ☒  NO ☐

If you ☒ YES, estimate the treatment schedule, including the dates of any scheduled appointments and the time required for each appointment, including any recovery period: at least every 3-4
months now

Will the patient need care from the employee or another person as a result of the follow-up treatment?

YES ☒                                          NO ☐

If so, describe the care needed by the patient from the employee or another person and why such care is medically necessary: Medication management, driving to +
from visits

5c. Will the patient require care from the employee or another person on an intermittent or reduced-schedule basis, including any time for recovery? YES ☒  NO ☐

If you ☒ YES, estimate the hours the patient needs care from the employee or another person on an intermittent basis:

_8_ hour(s) per day; _1_ days per week from _06/10/13_ through _indefinately or
death_   month

Describe the care needed by the patient from the employee or another person and why such care is medically necessary: _transportation , medication monitoring +_ _assistance , fall prevention_

5d. Will the condition cause **episodic flare-ups** periodically preventing the patient from participating in normal daily activities? YES ☒         NO ☐

If so, based on the patient's medical history and your knowledge of the medical condition, estimate the **frequency** of flare-ups and the **duration of related incapacity** that the patient may have over the next 6 months (e.g., one episode every three months lasting one to two days).

Frequency: _X 1_ times per _X_ week(s) _1_ month(s)

Duration: _X 1_ hours or _8⁰_ day(s) per episode

Will the patient need care from the employee or another person during these flare-ups? YES ☐      NO ☒

If so, describe the care needed by the patient from the employee or another person and why such care is medically necessary: _Supervision of medication , balance_ _impaired , high fall risk , assisting with_ _emotional needs._

FOR MEDICAL LEAVE FOR EMPLOYEE'S OWN SERIOUS HEALTH CONDITION:

6a. If this form is for the employee's own condition and **absence from work is required** (including absences due to pregnancy or a chronic condition), are there specific job duties the employee is unable to perform?

                              YES ☐                        NO ☐

If ☑ YES, please specify any restriction: _____

_____

6b. If able to perform some work, is the employee unable to perform **any one or more of the essential functions of the employee's job** (the employee or the employer should supply you with information about the essential job functions)?          YES ☐                  NO ☐

If you ☑ YES, please list the essential functions the employee is unable to perform: _____

_____

If you ☑ YES, how long do you think the employee will be unable to perform any one or more of the essential functions of the employee's job? _____

6c. If you ☑ check NO to both 6a. and 6b. above, is it necessary for the employee to be absent from work for treatment? YES ☐            NO ☐

Sep. 11. 2013  8:19AM          No. 8144   P. 4

## FOR MEDICAL LEAVE FOR A FAMILY MEMBER:

7a. If leave is required to care for the employee's family member with a serious health condition;

    1. Does the patient require assistance for basic medical, hygienic, or nutritional needs or safety? YES ☒  NO ☐

    2. Is the patient unable to transport himself or herself to the doctor? YES ☒  NO ☐

7b. If NO to both 1 and 2 above, would the employee's presence to provide psychological comfort or reassurance be beneficial to the patient or assist in the patient's recovery?  YES ☐  NO ☐

## REGIMEN OF TREATMENTS:

8a. If treatments will be required for the patient's condition, provide an estimate of the number of such treatments
    _4_  # treatments  ☐ per week; ☐ per month; ☒ per year; over what period _6/13 - 6/14_
    (# of weeks/months)

8b. If any of these treatments will be provided by another provider of health services (other than yourself)
    (e.g., physical therapist), please state the nature of the treatments:
    _Physical Therapy_

8c. Please provide a general description of the regimen of continuing treatment (e.g., prescription drugs,
    physical therapy requiring special equipment):  _Valium, Clonazepam_
    ☒ Prescription medication(s): _Prescription drugs, P.T, MD Psychologist_
    ☐ Other therapy: _Psychiatrists_

## EMPLOYEE TIME AWAY FROM WORK:

9a. YES ☒  NO ☐  Will it be necessary for *our BNSF employee* to be absent from work due to the patient's treatment?

9b. CONTINUOUS ABSENCE: If all or a portion of the absence will be continuous, please provide:
    Beginning Date _06/10/13_  Estimated End Date _indefinitely_

9c. INTERMITTENT ABSENCE: If absence is intermittent, will it be necessary for *our BNSF employee to be away
    from work occasionally (intermittently) or to work less than full schedule?*  YES ☒  NO ☐
    If yes, please provide the approximate frequency of absences our employee will need:
    _1_  # absences per _3 mths_  (For example: 3 absences per month)
    (number)       (week/month/or year)

9d. Will absence be necessary on weekends? YES ☐  NO ☒
9e. If Intermittent Leave, please provide the approximate duration of each absence that the employee will need:

    Appointments only ☐  < one day ☐  1 day ☒  1-2 days ☐  2 days ☐  2-3 days ☐  3 days ☐
    3-4 days ☐  4 days ☐  4-5 days ☐  5 days ☐  5-6 days ☐  6 days ☐  6-7 days ☐  7 days ☐
    Other ☐ - Please be specific _____

_Richard Dubinsky_
Printed Name of Health Care Provider and Degree
_Neurology_
Type of Practice
_3599 Rainbow Blvd_
Street Address

Signature _____  Date _6/11/13_
Telephone Number _588 6990_
City _KC_  State _KS_  Zip Code _66160_

D000007

TO BE COMPLETED BY THE EMPLOYEE REQUESTING LEAVE TO CARE FOR A FAMILY MEMBER:

Describe the care you will provide to your family member and estimate the leave needed to provide such care, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_____                    _Dec/00/13_
Employee Signature                                   Date

Employee Acknowledgment and Certification:  By my signature above, I acknowledge that I understand that if I do not timely submit a complete and sufficient certification, BNSF may delay or deny the leave, continued leave, or restoration to employment, treat my absence as unexcused, and impose appropriate disciplinary action, up to and including termination of employment.  I further understand that if I make any false or misleading oral or written statement in connection with my request for leave, I will be subject to appropriate disciplinary action, up to and including termination of employment.

PLEASE DO NOT RETURN THIS FORM TO THE EMPLOYEE.  PLEASE FAX FROM YOUR OFFICE TO:

BNSF RAILWAY, HR BENEFITS PROCESSING TEAM

FAX NUMBER:  (817) 352-3672

Revised 01-2011

5

37354



HR BENEFITS PROCESSING TEAM

BNSF Railway Company
P.O. Box 961055
Fort Worth, TX 76161-0055
2500 Lou Menk Drive, AOB-GL
Fort Worth, TX 76131-2828
Toll Free: (800) 234-1283
Phone: (817) 593-6400
Fax: (817) 352-3672

September 17, 2013

FRANK A. OROPEZA
1204 NE 73RD ST
GLADSTONE, MO 64118



DEFENDANT'S DEPOSITION EXHIBIT
15
51-17mp0

RE: Approval and Designation of FMLA Leave – *Medical Leave*

Dear Frank Oropeza:                    **Emp Id # 1550813**

On **09/11/2013** we received your request for **Intermittent Leave** under the Family and Medical Leave Act (FMLA) *for Medical Leave.* Your request was based on your own serious health condition or the serious health condition of your child, parent, or spouse.

Your request for **Intermittent Leave** is approved and the dates approved are **09/11/2013** through **09/10/2014**. Note that you may be required to obtain an updated Certification of Health Care Provider form from your provider within six months from your approval date, or earlier as permitted by the FMLA regulations if so notified in writing. All leave taken for this reason will be designated as FMLA leave. **The healthcare provider is stating you may need 4 absences per year duration 1 day, unlikely weekend absence.**

The FMLA requires that you notify BNSF as soon as practicable if dates of scheduled leave change or are extended or were initially unknown. After your leave begins you have the right to request information regarding your FMLA leave balance once every 30 days. Please direct any such request to the HR Benefits Processing Team.

**Additional Rights and Responsibilities for Taking FMLA Leave**

You will have the following **responsibilities** while on FMLA leave:

- You must provide at least 30 days' advance notice of the need to take FMLA leave when the need for leave is foreseeable (such as for planned medical treatment) or as soon as practicable if 30 days' notice is not possible. When the need for leave is unforeseeable, you must provide notice as soon as practicable. In such instances, it will generally be considered practicable for you to provide notice of the need for leave within the time and in accordance with the applicable procedures and policies for requesting time away from work. Failure to provide the required notice may result in denial of FMLA leave.
- BNSF will continue its contribution toward your health and welfare benefits during the leave. Your share of the premium payments on your health and wealth benefits will continue to be deducted from your regular pay.
- If you do not return to work following FMLA leave for a reason other than (1) the continuation, recurrence, or onset of a serious health condition that would entitle you to FMLA leave; (2) the continuation, recurrence, or onset of a covered service member's serious injury or illness that would

D000001

entitle you to FMLA leave; or (3) other circumstances beyond your control, you may be required to reimburse BNSF for its share of health insurance premiums paid on your behalf during your FMLA leave.

- *If circumstances change during the leave, it is your responsibility to contact the treating health care provider and have him/her fax updated information to the HR Benefits Processing Team at 1-817-352-3672.* The HR Benefits Processing Team can also be reached by calling 1-800-234-1283 or Company line 8-593-6400.

You also have the following **rights** while on FMLA leave:

- You have a right under the FMLA for up to 26 weeks of unpaid Service Member Leave or 12 weeks of Family, Medical or Exigency Leave in a single 12-month period. The "single 12-month period" begins on the first day you take FMLA and ends 12 months after that date. Note, however, that once a Service Member Leave is approved, any Medical Leave, Family Leave or Exigency Leave you take will count toward your 26 weeks of Service Member Leave and any Service Member Leave you take will count toward your 12 weeks of Family, Medical or Exigency Leave.
- Your health benefits must be maintained during any period of unpaid leave under the same conditions as if you continued to work.
- You must be reinstated to the same or an equivalent position with the same pay, benefits, and terms and conditions of employment on your return from FMLA-protected leave. If your leave extends beyond the end of your FMLA entitlement, you do not have reinstatement rights under the FMLA.
- You are not a "key" employee as described in the FMLA regulations. As a result, reinstatement may not be denied following FMLA leave on the grounds that such restoration will cause substantial and grievous economic injury to BNSF.
- If you are a salaried employee and are taking Medical Leave for yourself or your parent, spouse, or child, you will be required to substitute any accrued sick leave for any portion of your unpaid Medical Leave.
- If you are a scheduled employee, you will be required to substitute any accrued sick leave if you are taking Medical Leave for your own serious health condition or if your collective bargaining agreement otherwise would permit use of sick leave.
- You have the right to have any paid leave (e.g., personal days, vacation, sick leave) run concurrently with your unpaid Medical Leave, provided you meet any applicable requirements of the leave policy. If you do not meet the requirements for taking paid leave, you remain entitled to take unpaid Medical Leave.
- If you choose to substitute paid leave during your Medical Leave, substitution will happen in the following order, as applicable: (i) sick leave; (ii) unscheduled comp time; (iii) unscheduled personal leave; (iv) unscheduled vacation; (v) scheduled comp time; (vi) scheduled personal leave; and (vii) scheduled vacation. Contact your appropriate timekeeper if you wish to substitute any paid leave for which you may be eligible for unpaid Medical Leave.

Sincerely,

*HR Benefits Processing Team*

**CERTIFIED MAIL** # 7012 3460 0003 3173 7005


RAILWAY

GREG D. WRIGHT
Director Administration

*NEBRASKA DIVISION*

**BNSF Railway Company**

201 N. 7th Street
Lincoln, Nebraska 68508

Phone: 402-458-7596
FAX:  402-458-7769

CERTIFIED MAIL 91 7199 9991 7033 1197 3680
November 14, 2013

Frank A. Oropeza
EN:  1550813
1204 NE 73rd ST
Gladstone, MO 64118

Dear Mr. Oropeza,

You have been granted a Family Leave under Family/Medical Leave Act of 1993.  Medical certification was required from your health care provider before you qualified for your FMLA leave.  Medical information provided by your health care provider was personal and confidential and the medical condition underlying for FMLA leave is unknown to this office.  **Your approved FMLA allows you to lay off four (4) absences per year, with a duration of one to two (1-2) days per layoff, and unlikely weekend layoffs.**

Records indicate you have taken more than the recommended absences.  **You have laid off FMLA a total of seven (7) times in 2013, including four (4) weekend layoffs.** These layoffs exceed your allotment, and your pattern of leave is inconsistent with physician-recommended leave requirements.

Given the nature of your FMLA usage, BNSF is monitoring the situation closely.  If your medical condition has changed you must bring up to date your FMLA by providing an updated Health Certification (copy of form enclosed) and re-submit to HR Benefits Processing Team as indicated on the application. If your medical condition has not changed, you must comply with your approved FMLA restrictions or you may be subject to disciplinary action.

Sincerely,

Greg D. Wright
Director of Administration

Cc: Personal Records
    TransSupport
    Supt. Operations

Enclosure

DEFENDANT'S DEPOSITION
EXHIBIT
16
PENGAD 800-631-6989

# Investigation Data Worksheet

~~Audio File: □Oropeza.DSS (1117380)~~
Submitted by: JAMES TYLICK (B173669)
Pages: 19 (excluding cover page)

Date Submitted: □18-Sep-14
Date Draft copy of Transcript is required: □25-Sep-14
Final Transcript Due Date: □29-Sep-14

BNSF FILE NUMBER: NEB-TYE-09182014-1100-1550813-OROPEZA

Local File Number: NEB-14-00611
Cost Center: 61931
Division Code: NEB
Department Code: TYE

Conducting Officer: JAMES TYLICK
Email: JAMES.TYLICK@BNSF.COM    Phone: 816-472-2410

Secondary Contact: DARREN COMPTON
Email: DARREN.COMPTON@BNSF.COM    Phone: 402-413-4830

INVESTIGATION INFORMATION
Location: KANSAS CITY, MO    Date: □18-Sep-14    Time: 11:00
Date of Incident: □25-Jul-14    #Exhibits: 14    #Pages: 19

PURPOSE OF INVESTIGATION – Alleged Violations:
Alleged failure to comply with instructions issued in Certified Letter by
Nebraska Division DOA Greg Wright dated 11/14/13 concerning the frequency
and duration of FMLA absences from 9/11/13 and continueing.

Principal: FRANK A OROPEZA    EID: 1550813    Craft: ENGINEER

Representative: DANIEL R HOLDCROFT
    Title: ENGINEER    Org: BLET

Witness: DARREN R COMPTON    Title: DOA



Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

1 ☐☐☐☐JAMES TYLICK: Let the record reflect that this

2 investigation is being held at 153 West 14th Street, North

3 Kansas City, Missouri in the Murray yard conference room

4 at 1100 hours on September 18th, 2014. My name is James

5 Tylick, and I will be the Conducting Officer at this

6 investigation. The purpose of this investigation is

7 ascertaining the facts and determining Mr. Oropeza's

8 responsibility, if any, in connection with his alleged

9 failure to comply with instructions issued in a certified

10 letter by Nebraska Division Director of Administration

11 Greg Wright dated November 14th, 2013 concerning the

12 frequency and duration of his FMLA absences from September

13 11, 2013 and continuing while assigned as a TYE employee

14 on the Nebraska Division. These proceedings must be

15 confined to the subject matter under investigation and any

16 deviations either through interrogation or cross-

17 examination will be out of order. The company transcript

18 will be the official record of these proceedings.

19 Representatives will be given the opportunity in proper

20 order to present whatever pertinent information they may

21 have. Please understand that whispering during testimony,

22 passing notes, sending text messages, objections or

23 interruptions during questioning of witnesses or

24 principals, or any disruptive behavior will not be

25 tolerated. Please turn off all pagers, cell phones,

26 BlackBerrys or other similar devices and make sure they're

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

2

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1   on silent if they are uh, if they are in fact on. I would

2   like to remind everyone that they have an obligation to

3   conduct themselves in an orderly manner, treat all those

4   present with respect, and cooperate to the greatest extent

5   possible. The hearing officer and the organization will be

6   given ample opportunity in proper order to question all

7   witnesses who have knowledge surrounding this incident.

8   Please do not tamper with or lay objects on or near the

9   tape recorder during these proceedings. Reasonable

10  recesses will be granted upon request. At this time will

11  each person in the room please state their name, title,

12  location, and purpose in this investigation. I will begin,

13  my name is James Tylick and I am the Conducting Officer.

14  ☐☐☐☐DARREN R COMPTON: Darren Compton, Director of

15  Administration, Nebraska Division, uh, carrier witness.

16  ☐☐☐☐DANIEL R HOLDCROFT: Daniel Holdcroft, BLET 502 Local

17  Chairman, Mr. Oropeza's Representative.

18  ☐☐☐☐FRANK A OROPEZA: Frank Oropeza, Engineer, uh, Kansas City,

19  Missouri, Murray yard, uh, be the principal.

20  ☐☐☐☐JAMES TYLICK: Principal.

21  ☐☐☐☐FRANK A OROPEZA: Sorry.

22  ☐☐☐☐JAMES TYLICK: I will now read the notice of investigation

23  into the transcript.

24  ☐☐☐☐EXHIBIT 1 (JAMES TYLICK): It's on Joseph W. Dickerson,

25  Superintendent Murray yard letterhead. BNSF Railway. Dated

26  July 28th, 2014. Sent via certified mail to Frank Oropeza,

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.   3

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    Engineer. 1204 Northeast 73rd Street, Gladstone, Missouri

2    64118. An investigation has been scheduled at 1100 hours

3    Monday, August 4, 2014 for the purpose of ascertaining the

4    facts and determining responsibility, if any, in

5    connection with your alleged failure to comply with

6    instructions issued in certified letter by Nebraska

7    Division Director of Administration Greg D. Wright dated

8    November 14th, 2013 concerning the frequency and duration

9    of your FMLA absences from September 11th, 2013 and

10   continuing while assigned as a TY&E employee on the

11   Nebraska Division. The carrier's first date of knowledge

12   regarding this alleged rule violation was July 25th, 2014.

13   Those in attendance at this investigation in addition to

14   yourself will be Darren R. Compton, Director of

15   Administration, as carrier witness. The investigation will

16   determine possible violation of GCOR. 1.6, Conduct. GCOR

17   1.13, Reporting and Complying with Instructions. You are

18   ineligible for alternative handling. Contact

19   OPRDLENebinvests fax 402-458-7769 or

20   OPRDLENebinvests@bnsf.com with any questions regarding

21   this investigation, postponement, or waiver. Arrange for

22   representation and any witnesses you may desire at the

23   investigation as provided under the applicable provisions

24   of the labor agreement. Sincerely, Joseph W. Dickerson,

25   Superintendent Murray Yard. Cc: Personnel Records, Fort

26   Worth. Darren R. Compton, Director of Administration,

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.     4

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB=TYE=09182014=1100=1550813=OROPEZA

1    arrange to attend as witness.

2    ☐☐☐☐JAMES TYLICK: Mark this as Exhibit Number 1. There's a

3    series of additional investigation notices that were sent

4    uh, and postponements. I would like to enter these in as

5    exhibits as well. Is there any objection if I enter these

6    as exhibits and not read them uh, in their entirety into

7    the transcript, from the principal or his Representative?

8    ☐☐☐☐DANIEL R HOLDCROFT: Uh, the only thing that I can see that

9    is different on these is at the top, instead of Joseph W.

10    Dickerson they're coming from Darren R. Compton, Director

11    of Administration, Nebraska Division and signed Darren R.

12    Compton, Director of Administration. That's postponement

13    1, postponement 2, postponement 3, so I have no

14    objections.

15    ☐☐☐☐JAMES TYLICK: Okay, make, I'll make that uh, obviously

16    that note will be made as part of the record and on the

17    transcript here as indicated. I'll title the first

18    investigation postponement dated August 4th as Exhibit

19    Number 2. Investigation postponement number 2, the letter

20    dated August 20, 2014 is Exhibit Number 3. And the

21    investigation postponement number 3, this is dated

22    September 8th, 2014, is now Exhibit Number 4. Mr. Oropeza,

23    did you receive these investigation notices and

24    postponements?

25    ☐☐☐☐FRANK A OROPEZA: Yes.

26    ☐☐☐☐JAMES TYLICK: Okay. I will now call Mr. Compton as the

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

Case 4:16-cv-01013-GAF   Document 31-2   Filed 06/16/17   Page 51 of 106
D000203

1    first witness. Mr. Compton, can you please state your full

2    name and position?

3    ☐☐☐☐DARREN R COMPTON: Darren R. Compton, Nebraska, Director of

4    Administration.

5    ☐☐☐☐JAMES TYLICK: And years of service with the BNSF, sir?

6    ☐☐☐☐DARREN R COMPTON: I have approximately seven years of

7    service with Burlington Northern Santa Fe Railway.

8    ☐☐☐☐JAMES TYLICK: Can you give us a brief history of your

9    tenure with the company?

10   ☐☐☐☐DARREN R COMPTON: Uh, I was hired as, in North uh Kansas

11   City Murray Yard as a Trainmaster. Spent about two and a

12   half years there as a Trainmaster, moved to Lincoln,

13   Nebraska and I spent a year and a half inside uh, Hobson

14   Yard terminal there in Lincoln, Nebraska as a Terminal

15   Trainmaster. And then I spent a year and a half on the

16   Ravenna Sub as a Division Trainmaster, and approximately

17   one year now as the Director of Administration for the

18   Nebraska Division.

19   ☐☐☐☐JAMES TYLICK: Uh, Mr. Compton, what are some of your

20   primary duties as Director of Administration?

21   ☐☐☐☐DARREN R COMPTON: As Director of Administration uh, I

22   oversee the DPTS clerks, investigations, uh, vans,

23   facilities, uh, pretty much any administrative work that

24   goes through the division I see.

25   ☐☐☐☐JAMES TYLICK: Do you deal with leave of absences, uh,

26   FMLA, and uh, attendance for TY&E employees on the

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1   Nebraska Division?

2   ☐☐☐☐DARREN R COMPTON: Yes, I do.

3   ☐☐☐☐JAMES TYLICK: Mr. Compton, can you please tell us what

4   knowledge you have regarding Mr. Oropeza's alleged failure

5   to comply with instructions issued in certified letter by

6   Nebraska Division Director of Administration Greg D.

7   Wright dated November 14th, 2013 concerning the frequency

8   and duration of Mr. Oropeza's FMLA absences from September

9   11, 2013 and continuing while assigned as a TY&E employee

10  on the Nebraska Division?

11  ☐☐☐☐DARREN R COMPTON: Okay, um, first off uh, Mr. Oropeza

12  applied for FMLA and he had sent uh, the entire packet,

13  part of that from him, part of that from his primary care

14  provider into HR Benefits Processing Team and that team

15  uh, reviewed all the uh, information and sent Mr. Oropeza

16  a letter dated September 17th, 2013 uh, that basically

17  approved actually on September 11th, 2013 uh, he was

18  approved for intermittent leave from September 11th, 2013

19  through September 10, 2014. And the health care provider

20  had stated that he would need four absences per year and,

21  to take care of whatever this medical issue was. We don't

22  get to see that, that's all protected information, and you

23  know, and weekends were unlikely. This is a two page

24  document from the HR Benefits Processing Team.

25  ☐☐☐☐JAMES TYLICK: Does this document have pertinent

26  information to this investigation?

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

7

1    DARREN R COMPTON: Yes, it does.

2    JAMES TYLICK: Okay, I'm going to enter this as an exhibit

3    um, this letter dated September 17th, 2013. So uh, a

4    couple questions, Mr. uh Compton. Uh, uh, this, and this

5    is, backing up just a second, this is Exhibit Number 5,

6    letter of September 17th, 2013, Exhibit 5. What were the

7    dates that Mr. Oropeza was authorized FMLA use according

8    to this exhibit?

9    DARREN R COMPTON: According to Exhibit 5 uh, Mr. Oropeza

10    was authorized intermittent leave from September 11th,

11    2013 through September 10th, 2014.

12    JAMES TYLICK: And what kind of absences was Mr. Oropeza

13    uh, able to utilize for FMLA according to Exhibit 5?

14    DARREN R COMPTON: Beginning, according to Exhibit 5 and

15    his health care provider, it stated that he would need

16    four absences per year with a one day duration and

17    weekends unlikely.

18    JAMES TYLICK: Okay, can you please go on uh, regarding the

19    knowledge you have regarding the uh, investigation?

20    DARREN R COMPTON: Just as a backup to Exhibit 5 I'd like

21    to enter the United States Postal Service certified uh,

22    sheet here where Mr. Oropeza signed for that letter on-

23    JAMES TYLICK: Uh, you would like to enter this as an

24    exhibit, is that right, Mr. Compton?

25    DARREN R COMPTON: Yes, sir.

26    JAMES TYLICK: Uh, a few questions before I do. So this uh,

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

8

D000206

1    certified letter, this is a confirmation from the USPS uh,

2    that Mr. Oropeza received, Exhibit Number 5, is that what

3    you're saying?

4    ☐☐☐☐DARREN R COMPTON: That is correct. If you look at the

5    certification number, 7012 3460 0003 3173 7005, it

6    matches the certification number uh, this was delivered

7    to Mr. Oropeza.

8    ☐☐☐☐JAMES TYLICK: I'll enter that certification receipt as an

9    exhibit, it is Exhibit Number 6. Please go ahead.

10   ☐☐☐☐DARREN R COMPTON: And now moving to where, where we start,

11   really start this process as a certified letter from my

12   predecessor, Mr. Greg Wright, during an FMLA audit. Uh,

13   this letter is dated November 14th, 2013. Last four of the

14   certification is 3680 addressed to Mr. Oropeza in

15   Gladstone, Missouri where it states here, I'll just go

16   ahead and read the whole letter. It's on BNSF-

17   ☐☐☐☐DANIEL R HOLDCROFT: Before you read that I'd like to

18   object because where is Mr. Wright, Mr. Greg Wright?

19   ☐☐☐☐JAMES TYLICK: Uh-

20   ☐☐☐☐DANIEL R HOLDCROFT: He, he sent this letter so we should

21   be able to ask him questions about this letter, also.

22   ☐☐☐☐JAMES TYLICK: Your objection is noted and made part of the

23   record. Uh, Mr. Compton, what is the status of Mr. Wright?

24   ☐☐☐☐DARREN R COMPTON: Uh, Mr. Wright retired earlier this year

25   and I took his position.

26   ☐☐☐☐JAMES TYLICK: Mr. Compton, are you the DOA of the

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

9

1    Nebraska Division?

2    ☐☐☐☐DARREN R COMPTON: Yes, I-

3    ☐☐☐☐JAMES TYLICK: Today?

4    ☐☐☐☐DARREN R COMPTON: Yes, I am.

5    ☐☐☐☐JAMES TYLICK: And on the date that this letter was uh,

6    addressed that's being discussed at this point, was Mr.

7    Wright the DOA at that time?

8    ☐☐☐☐DARREN R COMPTON: Yes, he was.

9    ☐☐☐☐JAMES TYLICK: And you said that uh, where's Mr. Wright

10    again, or what's his status with the company?

11    ☐☐☐☐DARREN R COMPTON: Mr. Wright has retired from the BNSF and

12    is no longer a BNSF employee.

13    ☐☐☐☐JAMES TYLICK: Okay, and you've take over that role, right?

14    ☐☐☐☐DARREN R COMPTON: Yes, that is correct.

15    ☐☐☐☐JAMES TYLICK: Do I understand that right, is that correct?

16    ☐☐☐☐DARREN R COMPTON: Yes, that is correct.

17    ☐☐☐☐JAMES TYLICK: Okay. Um, based on those circumstances uh,

18    we'll let your objection be noted and made part of the

19    record and uh, allow this letter to be continue to be

20    discussed. Please go ahead, Mr. Compton.

21    ☐☐☐☐EXHIBIT 7 (DARREN R COMPTON): All right, this uh, letter

22    is on BNSF uh Railway letterhead. Uh, Greg D. Wright,

23    Director of Administration, Nebraska Division, BNSF

24    Railway Company, 201 North 7th Street, Lincoln, Nebraska

25    68508. Phone 402-458-7596. Fax 402-458-7769. Certified

26    mail number 91 7199 9991 7033 1197 3680. Dated November

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

D000208

1    14, 2013. Addressed to Frank A. Oropeza, Engineer. B

2    number 1550813. Sent to 1204 Northeast 73rd Street,

3    Gladstone, Missouri 64118. Dear Mr. Oropeza. You have been

4    granted a family leave under the Family and Medical Leave

5    Act of 1993. Medical certification was required from your

6    health care provided before you qualified for your FMLA

7    leave. Medical information provided by your health care

8    provider was personal and confidential and the medical

9    condition underlying for FMLA leave is unknown to this

10    office. Your approved FMLA allows you to layoff four, in

11    parentheses the number 4, absences per year with a

12    duration of one to two days, parentheses 1-2 days, per

13    layoff and unlikely weekend layoffs. Records indicate you

14    have taken more than the recommended absences. You have

15    laid off FMLA a total of seven times, in parentheses

16    number 7, times in 2013 in- including four, in parentheses

17    4, weekend layoffs. These layoffs exceed your alo-

18    allotment and your pattern of leave is inconsistent with

19    the physician's recommended leave requirements. Given the

20    nature of your FMLA usage BNSF is monitoring the situation

21    closely. If your medical condition has changed you must

22    bring up to date your FMLA by providing an updated health

23    certificate, certification, copy of form enclosed, and

24    resubmit to HR Benefits Processing Team as indicated on

25    the application. If your medical condition has not changed

26    you must comply with your approved FMLA restrictions or

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

11

1   you may be subject to disciplinary action. Sincerely, Greg

2   D. Wright, Director of Administration. Signed by Greg. cc:

3   Personnel Records. TransSupport. Superintendent

4   Operations.

5   □□□□JAMES TYLICK: I'm going to enter this letter uh, dated

6   November 14th, 2013 as an exhibit, it is Exhibit Number 6.

7   Mr. Compton, does Mr. Oropeza, I'm sorry, Exhibit Number 7

8   uh, retract that. The letter dated November 14, 2013 is

9   Exhibit Number 7. Mr. Compton, did Mr. Oropeza receive

10  this letter?

11  □□□□DARREN R COMPTON: I have here the United States Postal

12  Service uh, receipt of certified mail, again the last four

13  3680 uh, signed by Mr. Oropeza receiving it.

14  □□□□JAMES TYLICK: Like to enter that as an exhibit. This

15  certified receipt will be exhibit and it is Exhibit Number

16  8. Mr. Compton, please go ahead.

17  □□□□DARREN R COMPTON: Okay, as you can see by the letter

18  issued by Mr. Greg Wright that uh, initially as you, in

19  Exhibit 5, approved by the HR Processing Team, Mr. Oropeza

20  was approved four layoffs per year and that was approved

21  on September 11 and by November 14th when this letter was

22  published he had already laid off seven times, three times

23  more than his allotted for the entire year.

24  □□□□JAMES TYLICK: Okay, what happened next?

25  □□□□DARREN R COMPTON: Uh, moving forward, uh, we did another

26  uh, FMLA audit and uh, Mr. Oropeza's name came up again

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.                12

1    and that audit goes through uh, our first date of

2    knowledge that's on the investigation notice of July 25th,

3    2014 and at which time from September 11th, 2013 his

4    approval for FMLA of four days per month.

5    □□□□JAMES TYLICK: Mr. Compton, what, what was his approval,

6    four days per month?

7    □□□□DARREN R COMPTON: Four, four ab- I'm sorry, excuse me,

8    four absences per year.

9    □□□□JAMES TYLICK: Okay.

10    □□□□DARREN R COMPTON: And as of July 25th, the investigation

11    notice date, Mr. pa- Oropeza had laid off 17 times to that

12    date from September 11th, 2013 for FMLA when he was only

13    authorized four.

14    □□□□JAMES TYLICK: Do you have a paperwork that shows those

15    layoff events?

16    □□□□DARREN R COMPTON: Yes, I do, I have a spread sheet here

17    that Mr. Oropeza's layoffs, the dates, the times, when

18    they uh, began, when they ended, the number of hours used

19    for each layoff, and the date that that layoff happened

20    and what job Mr. Oropeza would have been working had he

21    worked. It's a two page document.

22    □□□□JAMES TYLICK: I'll enter this as an exhibit, it'll be

23    Exhibit Number 9. Mr. Compton, did the layoffs uh,

24    that are shown on Exhibit Number 9, did they coincide,

25    are they consistent with the instructions shown on

26    Exhibit Number 5?

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

D000211

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1   ▭▭▭▭DARREN R COMPTON: Based on the evidence between the

2   exhibits 5, 7, and 9 uh, they are not consistent.

3   Again, he laid off 17 times when he was authorized to

4   layoff four.

5   ▭▭▭▭JAMES TYLICK: Uh, Mr. Compton, just for the record uh, I'm

6   looking at Exhibit Number 9 and it looks like there's a

7   couple dates that may be listed at the same time here, so

8   for example on uh, page 2 uh, September 19, 2013 is listed

9   twice, so what from September 19th on this document to, to

10  July 24, 2014, um, taking away the entries that, that are

11  twice, or at, shown twice, uh, how many total days are

12  listed as FMLA layoffs?

13  ▭▭▭▭DARREN R COMPTON: Give me a moment to calculate here

14  because some of these layoffs uh, overlap more than one

15  day, so there's, there's multiple entries for days but you

16  have to, to calculate it based on start time and stop

17  time, so I'll need just a few minutes here.

18  ▭▭▭▭JAMES TYLICK: Okay.

19  ▭▭▭▭DARREN R COMPTON: All totaled constitates-constitutes 17.

20  ▭▭▭▭JAMES TYLICK: Okay, and how many days were authorized in

21  Exhibit 5?

22  ▭▭▭▭DARREN R COMPTON: Exhibit 5 authorized four absences per

23  year with a duration of one day.

24  ▭▭▭▭JAMES TYLICK: And is Exhibit 5 the uh, time range that's

25  shown on there for the FMLA, is that, does that correspond

26  to the time range that we're looking at, Exhibit 9?

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

1       DARREN R COMPTON: Uh, they correspond uh, between

2       September and, and July, September 2013 through July 2014,

3       uh, Mr. Oropeza actually has FMLA, or had FMLA up until

4       September 10th, 2014, so this does not calculate August

5       and September, this is just through July 25th of 2014.

6       JAMES TYLICK: Okay, understood. The time range that we're

7       looking at in Exhibit 9, Exhibit 5 was in force during

8       that time range that we're looking at in Exhibit 9, is

9       that correct?

10       DARREN R COMPTON: Okay, Exhibit 7, I see in Exhibit 7

11       and also uh, it says in bold, uh, could you just read

12       that section that's in bold on the first paragraph in

13       Exhibit 7?

14       DARREN R COMPTON: All right, uh, Exhibit 7, the first

15       paragraph uh, under Mr., or Dear Mr. Oropeza. Uh, in bold,

16       your approved FMLA allows you to layoff four, and in

17       parentheses 4, absences per year with a duration of one to

18       two days, in parentheses 1-2 days, per layoff and unlikely

19       weekend layoffs.

20       JAMES TYLICK: Did Mr. Oropeza's FMLA usage uh, change

21       after the letter sent November 14th, 2013?

22       DARREN R COMPTON: Based on the evidence we have presented

23       in Exhibit 9, uh, he did not follow the instructions

24       issued in the letter that is Exhibit 7 from Greg D.

25       Wright. Uh, he continued to layoff FMLA uh, more than four

26       times per year which he had already exceeded prior to the

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

D000213

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1   issuance of the letter. Uh, if you'll look on Exhibit 9

2   uh, Mr. Oropeza laid off five times during June and

3   another five times during July.

4   □□□□JAMES TYLICK: On Exhibit Number 7, can you read the last

5   sentence of the last paragraph?

6   □□□□DARREN R COMPTON: Exhibit Number 7 again is Mr. Greg D.

7   Wright's uh, letter to Mr. Oropeza. Uh, the last sentence

8   of the last paragraph: If your medical condition has not

9   changed you must comply with your approved FMLA

10  restrictions or you may be subject to disciplinary action.

11  □□□□JAMES TYLICK: Mr. Compton, uh, can you discuss any rules

12  that may come into play here uh, as it relates to this

13  investigation?

14  □□□□EXHIBIT 10 (DARREN R COMPTON): Uh, yes, I can, sir. Uh,

15  first off, the General Code of Operating Rules, Sixth

16  Edition, April 7th, 2010 revised September 1st, 2013, page

17  1-9, rule 1.13, Reporting and Complying with Instructions,

18  and it reads as: Employees will report to and comply with

19  instructions from supervisors who have the proper

20  jurisdiction. Employees will comply with instructions

21  issued by managers of various departments when the

22  instructions apply to their duties.

23  □□□□DANIEL R HOLDCROFT: I'm going to object to the 1.13

24  because Mr. Wright is not here to be able to question him

25  as to exactly what a conversation might have happened

26  between himself and Mr. Oropeza.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

Exhibit A

1    □□□□JAMES TYLICK: Uh, your objection is noted and made a part

2    of the record. Uh, as previously stated on the transcript

3    uh, we discussed why Mr. Wright is not here so we'll move

4    forward. I'm going to-

5    □□□□DANIEL R HOLDCROFT: I need you to make a ruling, either

6    accept or deny my objection, please.

7    □□□□JAMES TYLICK: Your objection is noted and made part of the

8    record. We're going to move forward. Uh, GCOR 1.13,

9    Reporting and Complying with Instructions is going to be

10   entered as exhibit, it is Exhibit Number 10. Based on, Mr.

11   Compton, based on uh, the exhibits that have been brought

12   forth thus far, with instructions complied with.

13   □□□□DARREN R COMPTON: Based on the exhibits and the evidence

14   uh, presented to the, this far in the investigation,

15   especially Exhibit 7, uh, certified letter issued by Mr.

16   Wright, uh, that uh, rule was not adhered to.

17   □□□□JAMES TYLICK: Okay. Any other rules that are applicable

18   here today?

19   □□□□EXHIBIT 11 (DARREN R COMPTON): Again, we have uh, GCOR,

20   General Code of Operating Rules, Sixth Edition, April 7th,

21   2010 revised December 1st, 2012, page 1-5, we have rule

22   1.6, Conduct. Employees must not be 1. Careless of the

23   safety of themselves or others. 2. Negligent. 3.

24   Insubordinate. 4. Dishonest. 5. Immoral. 6. Quarrelsome,

25   or 7. Discourteous. Any act of hostility, misconduct or

26   willful disregard or negligence affecting the interest of

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.
17

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
~~NEB-TYE-09182014-1100-1550813-OROPEZA~~

1    the company or its employees is cause for dismissal and

2    must be reported. Indifference to duty or to the

3    performance of duty will not be tolerated.

4    ☐☐☐☐JAMES TYLICK: I'll enter this as exhibit, it'll be titled

5    Exhibit Number 11. Mr. Compton, based on the evidence thus

6    far in these exhibits, was this complied with?

7    ☐☐☐☐DARREN R COMPTON: Based on the exhibits and the evidence

8    so far it was not complied with, 1 6, 1.6 was not

9    complied with.

10   ☐☐☐☐JAMES TYLICK: That's all the questions I have for you at

11   this time, Mr. Compton. Mr. Oropeza, do you have any

12   questions of Mr. Compton?

13   ☐☐☐☐FRANK A OROPEZA: I'll uh, let my Local Chairman, I'll let

14   my Local Chairman uh, ask the questions.

15   ☐☐☐☐JAMES TYLICK: Okay. So no questions at this time, is

16   that right?

17   ☐☐☐☐FRANK A OROPEZA: No, sir.

18   ☐☐☐☐JAMES TYLICK: Okay. Mr. Holdcroft, do you have any

19   questions?

20   ☐☐☐☐DANIEL R HOLDCROFT: Yes, sir, I do.

21   ☐☐☐☐JAMES TYLICK: Please go ahead.

22   ☐☐☐☐DANIEL R HOLDCROFT: Mr. Compton, what part of Exhibit

23   Number 11, 1.6, did Mr. Oropeza not comply with?

24   ☐☐☐☐DARREN R COMPTON: He did not comply with disrespect or

25   negligence affecting interest of the company. Mr. Oropeza

26   did not follow the instructions issued by Mr. Greg Wright,

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.   18

1    and by the uh, days he was allowed to layoff set forth in

2    Exhibit 5 uh, after his health care provided, his health

3    care provider provided the number of days that he would

4    need for this medical condition.

5    ☐☐☐☐☐DANIEL R HOLDCROFT: Okay, and on Exhibit Number 5, the

6    approval or designation of FMLA, you said he has, it says

7    the health care provider stating you may need four

8    absences per year, duration one day, unlikely weekend

9    absence. Does that say it cannot be a weekend day absence?

10    ☐☐☐☐DARREN R COMPTON: No, it does not, it says that it's

11    just unlikely.

12    ☐☐☐☐DANIEL R HOLDCROFT: Uh, but it's not out of the question

13    that it could be a weekend.

14    ☐☐☐☐DARREN R COMPTON: That is correct.

15    ☐☐☐☐DANIEL R HOLDCROFT: Okay, and also on Exhibit 5, page 2,

16    the second bullet down on the page, how many weeks of FMLA

17    are allowed by law?

18    ☐☐☐☐DARREN R COMPTON: This, actually the paragraph you're

19    citing uh, refers to several different types of leave.

20    ☐☐☐☐DANIEL R HOLDCROFT: Well why, why would it be in this

21    document if it doesn't pertain to this?

22    ☐☐☐☐DARREN R COMPTON: It does pertain to this, but again,

23    there's several different types of leaves here and if, you

24    have to go back to the original document where each type

25    of leave is explained, and Mr. Oropeza was authorized

26    intermittent leave, which means he is at a maximum

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

Case 4:16-cv-01013-GAF   Document 31-2   Filed 06/16/17   Page 65 of 106
D000217

1      authorized 12 weeks of family medical leave, which would

2      have been determined by his health care provider in the

3      health care certification document provided to the HR

4      determination team. The health care provider is the one

5      that stated, based on his evaluation of the patient, that

6      this would only require four layoffs per year.

7      ☐☐☐☐DANIEL R HOLDCROFT: Okay, and I would uh like to enter

8      this three page document into an exhibit. It is straight

9      from the U. S. Department of Labor web site and can you

10     read the first paragraph of that for me, please?

11     ☐☐☐☐JAMES TYLICK: Uh, before we entertain this as a potential

12     uh, exhibit uh, I need to make sure that we hold this

13     investigation in a fair and impartial manner and review it

14     to make sure that this has pertinent information uh, to

15     the investigation that's at hand today.

16     ☐☐☐☐DANIEL R HOLDCROFT: I believe it is very pertinent, it

17     describes FMLA which is what we are here for.

18     ☐☐☐☐JAMES TYLICK: Does this document pertain to the

19     instructions issued by certified letter, Nebraska Division

20     General Director Greg D. Wright of November 14, 2013?

21     ☐☐☐☐DANIEL R HOLDCROFT: Uh, yes, I believe it does seeing as

22     how he is talking about FMLA leave and he is giving

23     instructions on FMLA leave and this explains FMLA leave.

24     So they are coinciding, since we are both talking about

25     Family Medical Leave Act.

26     ☐☐☐☐JAMES TYLICK: Okay, I uh, I struggle a little bit to

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

D000218

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    see the connection at this point but I will grant the

2    uh, ex- document to be entered as a an exhibit at this

3    point and uh, we will move forward. This document will

4    become Exhibit Number 12. Okay, uh, please go ahead

5    with your question.

6    ☐☐☐☐DANIEL R HOLDCROFT: Mr. Compton, can you read that, that

7    first paragraph under fact sheet number 28?

8    ☐☐☐☐DARREN R COMPTON: The fact, it says a U.S. Department of

9    Labor Wages and Hours Division document. Fact sheet number

10    28A. Employee protections under the Family and Medical

11    Leave Act. The Family and Medical Leave Act, FMLA,

12    entitles eligible employees who work for covered employers

13    to take unpaid, job protected leave for a spec-specified,

14    excuse me, family and medical reasons. Eligible employees

15    may take up to 12 work weeks for leave during any 12 month

16    period for certain family and medical reasons and up to 26

17    work weeks for leaves during a single 12 month period for

18    military caregiver leave. See fact sheet 28F qualifying

19    reasons for leave under FMLA and fact sheet 28M, the

20    military leave provisions under the FMLA. This fact sheet

21    describes the protections the FMLA affords to employer,

22    employees during taking, wow, excuse me, while taking FMLA

23    leave and upon returning to work from FMLA leave. That

24    paragraph, other than-

25    ☐☐☐☐DANIEL R HOLDCROFT: I just asked you to read the question,

26    read the paragraph, I'll ask the questions, thank you.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.   21

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1      ☐☐☐☐DARREN R COMPTON: __(47:19 inaudible).

2      ☐☐☐☐DANIEL R HOLDCROFT: Does this say he is eligible for up to

3      12 work weeks of leave during any 12 month period?

4      ☐☐☐☐DARREN R COMPTON: No, it does not.

5      ☐☐☐☐DANIEL R HOLDCROFT: It doesn't. Did you not just read the

6      second sentence, it says eligible employees may take up to

7      12 work weeks of leave during any 12 month period?

8      ☐☐☐☐☐DARREN R COMPTON: That's what this letter says but it does

9      not reference Mr. Oropeza in this, it referenced that

10     eligible employees may take up to 12, it does not

11     guarantee 12 weeks. It is based on a health care provider

12     determination.

13     ☐☐☐☐DANIEL R HOLDCROFT: Well according to what I'm reading it

14     says up to 12 weeks. That is straight from the U.S.

15     Department of Labor Wage and Hour Division web site.

16     ☐☐☐JAMES TYLICK: Mr. Holdcroft, the question was answered by

17     Mr. Compton. Do you have any other questions?

18     ☐☐☐☐DANIEL R HOLDCROFT: Uh, yes, I do.

19     ☐☐☐☐JAMES TYLICK: Okay. Please go ahead with your additional

20     questions.

21     ☐☐☐☐DANIEL R HOLDCROFT: So if Mr. Oropeza, according to this

22     sheet was allowed up to 12 weeks, the Department of Labor

23     describes a work week as eight hour days, is that correct?

24     ☐☐☐☐JAMES TYLICK: Mr.-

25     ☐☐☐☐DARREN R COMPTON: I don't know.

26     ☐☐☐☐JAMES TYLICK: Mr., Mr. Holdcroft, we're not here to

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.  22

D000220

1    speculate, we have to go off the facts that were presented

2    to this point in this exhibit, in this investigation. So

3    please reference your questions regarding the facts that

4    were provided thus far.

5    □□□□DANIEL R HOLDCROFT: Okay. I also handed you another sheet

6    from the U.S. Department of Labor that does pertain to

7    this investigation because it is about FMLA which is about

8    what this investigation pertains to, seeing as how Mr.

9    Wright's letter specifically says FMLA. I would like to

10    enter this in as an exhibit. It is a two page document.

11    □□□□JAMES TYLICK: Does this document pertain to the

12    question of eligible employees may take up to 12 work

13    weeks of leave?

14    □□□□DANIEL R HOLDCROFT: No, this pertains to the FMLA letter

15    that Mr. Wright sent to Mr. Oropeza.

16    □□□□JAMES TYLICK: Okay.

17    □□□□DANIEL R HOLDCROFT: It says the letter that Greg D. Wright

18    sent specifically says FMLA. This is FMLA.

19    □□□□JAMES TYLICK: And what on this document do you have

20    questions regarding?

21    □□□□DANIEL R HOLDCROFT: Well, I would like you to enter it in

22    as an exhibit before we get into that, please.

23    □□□□JAMES TYLICK: Uh, we'll not enter it into exhibit until I

24    understand fully how it pertains to this investigation.

25    □□□□DANIEL R HOLDCROFT: Well like I said, just the three times

26    before it pertains to FMLA which Exhibit Number 7, the

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

1    letter in question from Greg D. Wright that's stated on

2    all the investigation notices pertains to FMLA and this

3    letter, this two page document from the U.S. Department of

4    Labor, also pertains to FMLA.

5    ☐☐☐☐JAMES TYLICK: I will decline the uh, request to enter this

6    as an exhibit at this point in this investigation uh, as

7    it is unclear to me how uh, this uh, letter, or this

8    document with information about FMLA has bearing on

9    determining the facts and assessing responsibility, if

10   any, in connection with Mr. Oropeza's alleged failure to

11   comply with instructions issued in certified letter by

12   Nebraska Division General, uh, Director of Administration

13   Gregory Wright dated November 14th, 2013 concerning the

14   frequency and duration of his FMLA absences from September

15   11, 2013 and continuing. Do you have any other questions

16   of Mr. Compton?

17   ☐☐☐☐DANIEL R HOLDCROFT: Not at this time but I do reserve the

18   right to recall.

19   ☐☐☐☐JAMES TYLICK: Thank you. Mr. Oropeza, any questions of

20   Mr. Compton?

21   ☐☐☐☐FRANK A OROPEZA: No, sir.

22   ☐☐☐☐JAMES TYLICK: Okay. That's all the questions we have for

23   you at this time, Mr. Compton. Um, do you guys request to

24   excuse him while we go forward?

25   ☐☐☐☐DANIEL R HOLDCROFT: No, uh-

26   ☐☐☐☐JAMES TYLICK: Or do you guys want a recess?

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

D000222

1    ⬜⬜⬜⬜DANIEL R HOLDCROFT: Let's take a quick recess and we

2    can excuse him, but like I said, I do reserve the right

3    to recall.

4    ⬜⬜⬜JAMES TYLICK: Okay. Uh, I will grant that recess request,

5    we'll take about a ten minute recess. Uh, the time is now

6    12:10 and we are in recess. We have returned from recess,

7    the time is 12:20. Mr. Oropeza, can you please state your

8    name in full?

9    ⬜⬜⬜FRANK A OROPEZA: Uh, Frank Oropeza.

10   ⬜⬜⬜JAMES TYLICK: And Mr. Oropeza, your occupation?

11   ⬜⬜⬜FRANK A OROPEZA: I'm an Engineer.

12   ⬜⬜⬜JAMES TYLICK: And your employee number?

13   ⬜⬜⬜FRANK A OROPEZA: 1550813.

14   ⬜⬜⬜JAMES TYLICK: Mr. Oropeza, were you approved FMLA?

15   ⬜⬜⬜FRANK A OROPEZA: Yes.

16   ⬜⬜⬜JAMES TYLICK: Uh, several exhibits have been entered thus

17   far, the first one is Exhibit 5. Did you get Exhibit 5?

18   ⬜⬜⬜FRANK A OROPEZA: Yes.

19   ⬜⬜⬜JAMES TYLICK: Okay, and did Exhibit 5 approve you for

20   intermittent leave for FMLA uh, between September 11, 2013

21   and September 10th, 2014?

22   ⬜⬜⬜FRANK A OROPEZA: That's correct.

23   ⬜⬜⬜JAMES TYLICK: Okay. Uh, on Exhibit 5 did you read and

24   understand Exhibit 5, the letter, when you received it?

25   ⬜⬜⬜FRANK A OROPEZA: Yes.

26   ⬜⬜⬜JAMES TYLICK: Okay, did Exhibit 5 state the uh, conditions

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1   of the FMLA leave, specifically the number of absences and

2   the duration?

3   ☐☐☐☐FRANK A OROPEZA: Yes.

4   ☐☐☐☐JAMES TYLICK: And what did Exhibit 5 state uh, as it

5   relates to the absences and duration?

6   ☐☐☐☐FRANK A OROPEZA: Do you want me to read this bold print?

7   ☐☐☐☐JAMES TYLICK: Yeah, that's the answer to the question,

8   yes, please.

9   ☐☐☐☐FRANK A OROPEZA: Uh, the health care provider is stating

10   you may need four absences per year, duration one day,

11   unlikely weekend absences.

12   ☐☐☐☐JAMES TYLICK: Okay. Exhibit Number 7 was entered in as an

13   exhibit uh, prior to this investigation, a letter from

14   Greg D. Wright. Did you get this letter?

15   ☐☐☐☐FRANK A OROPEZA: Yes.

16   ☐☐☐☐JAMES TYLICK: Did you understand the provisions of uh,

17   this letter?

18   ☐☐☐☐FRANK A OROPEZA: Yes.

19   ☐☐☐☐JAMES TYLICK: Did the number of layoffs events or FMLA as

20   highlighted in Exhibit 5 and Exhibit 7 exceed that which

21   is allowed in exhi- that is allowed for Exhibits 5 and 7?

22   I can ask the question in a different way.

23   ☐☐☐☐FRANK A OROPEZA: Yes.

24   ☐☐☐☐JAMES TYLICK: Did you layoff FMLA more than what Exhibit 5

25   and 7 allowed?

26   ☐☐☐☐FRANK A OROPEZA: Yes.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    26

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1        JAMES TYLICK: Okay. And there were two rules that were

2        entered as an exhibit, uh, Exhibit 10 was GCOR 1.13,

3        Reporting and Complying with Instructions, and Exhibit 11

4        is GCOR 1.6, Conduct. Do you understand the provisions of

5        those rules?

6        FRANK A OROPEZA: Yes.

7        JAMES TYLICK: Okay, no further questions of you at

8        this time. Mr. Holdcroft, do you have any questions of

9        Mr. Oropeza?

10       DANIEL R HOLDCROFT: Uh, yes, I do.

11       JAMES TYLICK: Okay, please go ahead.

12       DANIEL R HOLDCROFT: Uh, Mr. Oropeza, you have FMLA, is

13       that correct?

14       FRANK A OROPEZA: Yes.

15       DANIEL R HOLDCROFT: What is FMLA for?

16       FRANK A OROPEZA: It um, it is for my mother's health

17       condition.

18       DANIEL R HOLDCROFT: How often does her health condition

19       require you to be of assistance to her?

20       FRANK A OROPEZA: Um, as number it's, it's unpredictable

21       um, as pertaining to her health.

22       DANIEL R HOLDCROFT: So it could be more than four?

23       FRANK A OROPEZA: Yes.

24       DANIEL R HOLDCROFT: What are the four absences that

25       Exhibit 5 is talking about, four absences per year. What

26       are, what are those for?

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.  27

1    ☐☐☐☐FRANK A OROPEZA: The four absences per year is, is r- is

2    the doctor's appointments that are scheduled for her.

3    ☐☐☐☐DANIEL R HOLDCROFT: So those are just for appointments,

4    those aren't for any other necessary attendance that she

5    might need. In other words, she might need more help than

6    just the four-

7    ☐☐☐☐FRANK A OROPEZA: Yes.

8    ☐☐☐☐DANIEL R HOLDCROFT: Doctor's visits.

9    ☐☐☐☐FRANK A OROPEZA: Yes.

10    ☐☐☐☐DANIEL R HOLDCROFT: What does she need help doing?

11    ☐☐☐☐FRANK A OROPEZA: Um, everyday life activities, uh,

12    examples, walking, uh, uh, just everyday life ac- sh- uh,

13    she can't drive, she needs a driver um, just everyday life

14    activities as normal people would uh.

15    ☐☐☐☐DANIEL R HOLDCROFT: So it could happen at any day or time

16    of the week-

17    ☐☐☐☐FRANK A OROPEZA: Yes.

18    ☐☐☐☐DANIEL R HOLDCROFT: That she would need assistance?

19    ☐☐☐☐FRANK A OROPEZA: Yes, any, any day, time, or any, any

20    night, is also throughout the night.

21    ☐☐☐☐DANIEL R HOLDCROFT: On Exhibit 12, page 1, the second

22    sentence, what does that state? Uh, starting with

23    eligible.

24    ☐☐☐☐FRANK A OROPEZA: Eligible employees may take up to 12 work

25    weeks of leave during any 12 month period for certain

26    family and medical reasons and up to 12 work weeks of

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

Case 4:16-cv-01013-GAF   Document 31-2   Filed 06/16/17   Page 74 of 106

D000226

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1     leave during 12s, 12 month period military cl- care-

2     caregiver leave.

3     □□□□DANIEL R HOLDCROFT: So according to that document would

4     you not expect that you would have had 2 weeks of leave?

5     □□□FRANK A OROPEZA: That's correct.

6     □□□□DANIEL R HOLDCROFT: Not four days of leave?

7     □□□□FRANK A OROPEZA: That's correct.

8     □□□□DANIEL R HOLDCROFT: Okay, and if, how many days are

9     in a week?

10    □□□□FRANK A OROPEZA: Seven.

11    □□□□DANIEL R HOLDCROFT: And 12 weeks, seven days, that's 84

12    days?

13    □□□□FRANK A OROPEZA: That's correct.

14    □□□□DANIEL R HOLDCROFT: And Mr. Compton gave us Exhibit Number

15    9, two page document.

16    □□□□FRANK A OROPEZA: Yes.

17    □□□□DANIEL R HOLDCROFT: And how many days did he say that you

18    had taken?

19    □□□□FRANK A OROPEZA: I believe he said 17.

20    □□□□DANIEL R HOLDCROFT: So 17 is a lot less than 84, is

21    that correct?

22    □□□□FRANK A OROPEZA: That's correct.

23    □□□□DANIEL R HOLDCROFT: And the way we work, we don't work

24    scheduled days, is that correct?

25    □□□□FRANK A OROPEZA: That's correct.

26    □□□□DANIEL R HOLDCROFT: So one of your days that you take off

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

29

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    could exceed an eight-hour day, is that correct?

2    ⬜⬜⬜⬜FRANK A OROPEZA: That's correct.

3    ⬜⬜⬜⬜DANIEL R HOLDCROFT: So 17 days at 24 hours a day would

4    leave you with a total of 408 hours, is that correct?

5    ⬜⬜⬜⬜FRANK A OROPEZA: Yes.

6    ⬜⬜⬜⬜DANIEL R HOLDCROFT: And 2 weeks at seven days a week at

7    eight hours a day would have allowed you 672 hours, is

8    that correct?

9    ⬜⬜⬜⬜FRANK A OROPEZA: Yes.

10   ⬜⬜⬜⬜DANIEL R HOLDCROFT: So 408 is a lot less than 672, is

11   that correct?

12   ⬜⬜⬜⬜FRANK A OROPEZA: Yes.

13   ⬜⬜⬜⬜DANIEL R HOLDCROFT: So do you believe that you were in

14   violation of the FMLA that you applied for?

15   ⬜⬜⬜⬜FRANK A OROPEZA: No.

16   ⬜⬜⬜⬜DANIEL R HOLDCROFT: I have no more questions for Mr.

17   Oropeza at this time, but do reserve the right to recall.

18   ⬜⬜⬜⬜JAMES TYLICK: Make a few, few questions, Mr. Or- Oropeza.

19   On Exhibit Number 5 on the second page uh, where it says

20   you also have the following rights while on FMLA, that

21   first bullet point, it says there that you have the right

22   under FMLA for up to 26 weeks of unpaid service member

23   leave or 12 weeks of family medical leave in a single 12

24   month period, is that correct?

25   ⬜⬜⬜⬜FRANK A OROPEZA: Yes.

26   ⬜⬜⬜⬜JAMES TYLICK: But on the first page of Exhibit Number 5

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    30

1    you read earlier into the transcript that the, and then

2    bold, the health care provider is stating that you may

3    need four absences per year, duration one day, unlikely

4    weekend absences, is that correct?

5    ☐☐☐☐FRANK A OROPEZA: Yes, that is correct, it says the health

6    care provider is stating you may need four absences per

7    year duration one day, unlikely weekend absence.

8    ☐☐☐☐JAMES TYLICK: Okay. And then in Exhibit Number 7, also

9    in bold, uh it says your approved FMLA allows you to

10    layoff four absences per year with the duration of one

11    to two days per layoff and unlikely weekend layoffs, is

12    that correct?

13    ☐☐☐☐FRANK A OROPEZA: That is correct.

14    ☐☐☐☐JAMES TYLICK: Okay, did you get any documentation uh,

15    during the course of this FMLA leave between September

16    11th, 2013 and September 10th, 2014, or when this

17    investigation notice uh, first came out, that authorized

18    FMLA use for the full 12 weeks?

19    ☐☐☐☐FRANK A OROPEZA: Yes.

20    ☐☐☐☐JAMES TYLICK: You did get a letter?

21    ☐☐☐☐FRANK A OROPEZA: Oh, from–

22    ☐☐☐☐JAMES TYLICK: BNSF.

23    ☐☐☐☐FRANK A OROPEZA: Like a approval letter?

24    ☐☐☐☐JAMES TYLICK: Yes.

25    ☐☐☐☐FRANK A OROPEZA: Yes.

26    ☐☐☐☐JAMES TYLICK: From the HR Benefits Processing Team?

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

D000229

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    ☐☐☐☐FRANK A OROPEZA: Yes.

2    ☐☐☐☐JAMES TYLICK: Approving you for 12 weeks of-

3    ☐☐☐☐FRANK A OROPEZA: Oh, no, now, you, you're asking for uh,

4    for a set stating 12 weeks, or what are, what are you

5    asking, I'm sorry.

6    ☐☐☐☐JAMES TYLICK: My question here is in Exhibit 5 and

7    Exhibit 7 it says that you are approved four absences per

8    year for FMLA.

9    ☐☐☐☐FRANK A OROPEZA: Yes.

10   ☐☐☐☐JAMES TYLICK: Okay, that's Exhibit 5 and Exhibit 7.

11   ☐☐☐☐FRANK A OROPEZA: Okay.

12   ☐☐☐☐JAMES TYLICK: Did you get any further correspondence

13   allowing additional FMLA usage?

14   ☐☐☐☐FRANK A OROPEZA: I resubmitted my FMLA application if

15   that's what you're asking.

16   ☐☐☐☐JAMES TYLICK: Okay, but did you get anything back from the

17   HR Benefits Processing Team approving FMLA usage in excess

18   of four absences per year, duration one day?

19   ☐☐☐☐FRANK A OROPEZA: I'm still not understanding your

20   question because if, are you asking if, if I got more

21   than the four days?

22   ☐☐☐☐JAMES TYLICK: Yes.

23   ☐☐☐☐FRANK A OROPEZA: Yes.

24   ☐☐☐☐JAMES TYLICK: So that was approved by the HR Benefits

25   Processing Team?

26   ☐☐☐☐FRANK A OROPEZA: Yes.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    32

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    ☐☐☐☐JAMES TYLICK: You applied and it was approved, is that

2    what you're saying?

3    ☐☐☐☐FRANK A OROPEZA: Yes.

4    ☐☐☐☐JAMES TYLICK: Okay, can you show me that approval letter?

5    ☐☐☐☐FRANK A OROPEZA: This is the current application of a-

6    ☐☐☐☐JAMES TYLICK: Not the application, but can, do you have an

7    approval letter from that application?

8    ☐☐☐☐FRANK A OROPEZA: I don't believe I have it handy. I could

9    see if I have it in my paperwork.

10   ☐☐☐☐JAMES TYLICK: Okay. Mr. Oropeza, would you like a short

11   recess while you review your paperwork?

12   ☐☐☐☐FRANK A OROPEZA: Sure.

13   ☐☐☐☐JAMES TYLICK: Any objections to a short recess?

14   ☐☐☐☐DANIEL R HOLDCROFT: No.

15   ☐☐☐☐JAMES TYLICK: Okay. Uh, let the record, five minute

16   agreeable, short?

17   ☐☐☐☐FRANK A OROPEZA: Yes.

18   ☐☐☐☐JAMES TYLICK: Uh, let's take a short recess uh, while we

19   gather the paperwork here. The time is 12:35, this

20   investigation is in recess. Okay, let the record reflect

21   we've returned from recess, the time is 12:45. Mr.

22   Oropeza, uh, please continue.

23   ☐☐☐☐FRANK A OROPEZA: Yes, I did uh, receive uh, documentation

24   from uh, BNSF Railway Company HR Benefits Processing Team

25   which is stating that I am required to uh, have the more

26   than four days um, of FMLA. It is stating here on this

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.          33

1    from the BNSF uh, processing team um, under section 5A of

2    this uh, FML leave uh, certification of health care family

3    medical leave uh, application. Um, it says, will patient

4    be in, inca- incapacitated for a single continuous period

5    of time including any time for treatment and recovery. It

6    is checked box yes. If yes, estimate the beginning and

7    ending dates for the period of incapacitated, that's left

8    blank. If leave is requested for the care of a family

9    member during this time will patient need care from

10    employee or another person, that's checked yes. If believe

11    its requested for the care of a family member describe the

12    care needed by a patient from employee or other person and

13    why such care is, is medically necessary.

14    ☐☐☐☐JAMES TYLICK: Okay, Mr. Oropeza, if I could stop you there

15    for a minute. You mentioned that this was part of the

16    application. Do you have any documentation from the HR

17    Benefits Processing Team that approves-

18    ☐☐☐☐FRANK A OROPEZA: This was faxed over to me today from the

19    Benefits Processing Team.

20    ☐☐☐☐JAMES TYLICK: Say that again now?

21    ☐☐☐☐FRANK A OROPEZA: This was faxed over to me today from the

22    Benefits Processing Team.

23    ☐☐☐☐JAMES TYLICK: Your application?

24    ☐☐☐☐FRANK A OROPEZA: Yes.

25    ☐☐☐☐JAMES TYLICK: Okay.

26    ☐☐☐☐FRANK A OROPEZA: And to, I talked to the benefits

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

Exhibit A

1    processing uh, person down there by the name of Debbie

2    Harris and she, on my recent um, application of two thou-

3    September 13, 2013, September 13, 2013, uh, it was good

4    for, application status was good for a whole year and it

5    didn't, it didn't even get resubmitted and uh, if things

6    have changed uh, then you need, I needed to resubmit

7    another application of progress for things have changed

8    with my mother.

9    ☐☐☐☐JAMES TYLICK: Okay, so, Mr. Oropeza, going back to my

10   original question, this letter, not an application that

11   you, that you or your health care provider filled out, but

12   the letter that looks like this from the HR Benefits

13   Processing Team which is Exhibit 5-

14   ☐☐☐☐FRANK A OROPEZA: Yes.

15   ☐☐☐☐JAMES TYLICK: Did you receive approval for FMLA in excess

16   of the four absences per year, duration one day, unlikely

17   weekend absence uh, between, between September 11th, 2013

18   and the uh, date listed on the notice, July 25th, 2014.

19   ☐☐☐☐FRANK A OROPEZA: This was my approval letter for that.

20   ☐☐☐☐JAMES TYLICK: When you say this what are you referring to-

21   ☐☐☐☐FRANK A OROPEZA: I'm, I'm sorry-

22   ☐☐☐☐JAMES TYLICK: Exhibit 5?

23   ☐☐☐☐FRANK A OROPEZA: Yes, I'm sorry, Exhibit 5.

24   ☐☐☐☐JAMES TYLICK: Was your approval for what?

25   ☐☐☐☐FRANK A OROPEZA: For FMLA.

26   ☐☐☐☐JAMES TYLICK: Okay.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    35

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1       FRANK A OROPEZA: I got from the BNSF uh, Benefits

2   Processing Team.

3       JAMES TYLICK: Okay, so Exhibit 5 was that approval.

4       FRANK A OROPEZA: Yes.

5       JAMES TYLICK: And Exhibit 5 states four absences per year,

6   one day duration, correct?

7       FRANK A OROPEZA: Yes.

8       JAMES TYLICK: Did you get anything other than Exhibit 5

9   that said you were approved for more than four absences

10  per one year duration?

11      FRANK A OROPEZA: No.

12      JAMES TYLICK: Okay.

13      FRANK A OROPEZA: But this approval letter in Exhibit 5

14  says the health care provider is stating you may, which is

15  may need four absences per year for duration one day,

16  unlikely weekend absence.

17      JAMES TYLICK: Okay, that's stated in Exhibit 5, correct?

18      FRANK A OROPEZA: That's correct.

19      JAMES TYLICK: Okay. And Exhibit 7 states the approved FMLA

20  allows you to layoff four absences per year, duration one

21  to two days per layoff and unlikely weekends, correct?

22      FRANK A OROPEZA: That's correct.

23      JAMES TYLICK: Okay, so no other correspondence between

24  Exhibit f- other than Exhibit 5 and Exhibit 7 approving

25  additional time off, is that correct?

26      FRANK A OROPEZA: That's correct.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

Case 4:16-cv-01013-GAF   Document 31-2   Filed 06/16/17   Page 82 of 106
D000234

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1  ☐☐☐☐JAMES TYLICK: Okay. Uh, no more questions of Mr. Oropeza.

2  Uh, Mr. Holdcroft, any questions?

3  ☐☐☐☐DANIEL R HOLDCROFT: Yes, I do have a couple.

4  ☐☐☐☐JAMES TYLICK: Okay, please go ahead.

5  ☐☐☐☐DANIEL R HOLDCROFT: Mr. Oropeza, when, did you have to

6  update your FMLA paperwork?

7  ☐☐☐☐FRANK A OROPEZA: Yes, I was uh, instructed by Mr. Greg uh,

8  Greg Wright.

9  ☐☐☐☐DANIEL R HOLDCROFT: Okay, did you update that paperwork?

10 ☐☐☐☐FRANK A OROPEZA: Yes.

11 ☐☐☐☐DANIEL R HOLDCROFT: Is that the paperwork that you have in

12 your hand?

13 ☐☐☐☐FRANK A OROPEZA: That's correct.

14 ☐☐☐☐DANIEL R HOLDCROFT: And does that paperwork say anything

15 about an excess of the four doctor's visits that you might

16 need to layoff to take care of your sick mother?

17 ☐☐☐☐FRANK A OROPEZA: Yes.

18 ☐☐☐☐DANIEL R HOLDCROFT: What does it say, please?

19 ☐☐☐☐FRANK A OROPEZA: Well it states that uh, and basically

20 like I was reading section 5, it, it's, it's under 5A um,

21 if all the boxes are checked yes, and they are checked

22 yes, like I stated previously, it says if leave is request

23 for care of a family member describe the care needed by

24 the patient from the employee or other person and why such

25 care is medically necessary. And it states driving patient

26 to and from visits, caring, ex- explanation planned care

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of    37
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

1    which everyday life will patient require follow-up

2    treatment including any time for recovery, which is uh, 5D

3    and that is, is checked box yes. If yes estimate the

4    number of scheduled including the dates of scheduled

5    appointments and the time required ea- for each

6    appointment including recovery period. At least three to

7    four months from now will the patient need care from

8    employee or other person as a result follow-up treatment.

9    That's checked box yes. If so describe the care needed by

10   patient from the employee or other person and why such a

11   care is medically necessary. Medi- medication management

12   and driving to and from visits, section 5C, will patient

13   require care from the employee or other person on an

14   intermittent or reduces schedule basis including any time

15   for recovery. That's check box yes. If, if you checked yes

16   estimate the hours the patient needs from the employee or

17   other person on intermittent basis. Eight hours per day,

18   one day per month, and its dated 06/10 of 2013 through

19   infinity or death. And then there's a continuance. It says

20   describe the care needed by the patient from employee or

21   other person and why such care is medically necessary.

22   Transportation, medi- medication monitoring, and

23   assistance in fall preven- prevention. 5D. Will condition

24   cause episodic flare ups periodically to relieve the

25   patient from participating in normal daily activities.

26   That's check box yes.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.                38

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    ☐☐☐☐JAMES TYLICK: Mr. Oro— Oropeza, uh, just for

2    clarification, this section 5A through I think 5D you're

3    talking about.

4    ☐☐☐☐FRANK A OROPEZA: Yes.

5    ☐☐☐☐JAMES TYLICK: Just for clarification, is this the

6    application you're referencing? I mean from?

7    ☐☐☐☐FRANK A OROPEZA: Yes.

8    ☐☐☐☐JAMES TYLICK: Okay, I want to make sure that we don't go

9    down an avenue that uh, is providing information that may

10   be protected, and I want to make sure that uh, that we

11   steer down the road that is referencing the investigation

12   that's under hand here today.

13   ☐☐☐☐FRANK A OROPEZA: This section is just the, it's, it's

14   basically just explaining the days off that covers like

15   FMLA for this.

16   ☐☐☐☐JAMES TYLICK: And what's the date of that application?

17   ☐☐☐☐FRANK A OROPEZA: The date is June 11th, 2013.

18   ☐☐☐☐JAMES TYLICK: Okay, so that, you're referencing the

19   application?

20   ☐☐☐☐FRANK A OROPEZA: That's correct.

21   ☐☐☐☐JAMES TYLICK: Uh, in, in that question from Mr., from Mr.

22   Holdcroft. Okay, we need to steer your responses to what

23   has been approved from the HR Benefits Processing Team and

24   the compliance with instructions of Mr. Wright on

25   certified letter dated November 14th, 2013.

26   ☐☐☐☐FRANK A OROPEZA: Well, the—

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    39

D000237

1    ☐☐☐JAMES TYLICK: From Mr. Hol- from the letter Mr.

2    Holdcroft, ask that question differently to steer us back

3    on the course.

4    ☐☐☐☐DANIEL R HOLDCROFT: Okay. Mr. Oropeza, the date on the

5    letter from Mr. Wright is dated November 14, 2013, is

6    that correct?

7    ☐☐☐☐FRANK A OROPEZA: That's correct.

8    ☐☐☐☐DANIEL R HOLDCROFT: What is the date on the paperwork that

9    you have in your hand?

10   ☐☐☐☐FRANK A OROPEZA: June 11th of 2013.

11   ☐☐☐☐DANIEL R HOLDCROFT: And if nothing is changed would you

12   have had to have updated that paperwork?

13   ☐☐☐☐FRANK A OROPEZA: No.

14   ☐☐☐☐DANIEL R HOLDCROFT: So that paperwork would cover the time

15   line that we are talking about for this investigation

16   which started September 11th, 2013, since June 11th, 2013,

17   is prior to the date of this investigation and the

18   company's first knowledge, is that correct?

19   ☐☐☐☐FRANK A OROPEZA: That's correct.

20   ☐☐☐☐DANIEL R HOLDCROFT: I have no further questions but I do

21   reserve the right to recall.

22   ☐☐☐JAMES TYLICK: Okay, uh, a few questions, Mr. Oropeza. Uh,

23   your testimony there was referencing in an application for

24   FMLA. It was approved uh, based on the September 17th,

25   2013 letter, is that right?

26   ☐☐☐☐FRANK A OROPEZA: That's correct.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    40

1    ☐☐☐☐JAMES TYLICK: Okay, and you stated earlier that you

2    were approved FMLA based on the letter that you

3    received September 17th, or authored, written uh,

4    September 17th, 2013?

5    ☐☐☐☐FRANK A OROPEZA: Yes.

6    ☐☐☐☐JAMES TYLICK: And that letter states that you may need

7    four absences per year, duration one day, unlikely

8    weekend absences?

9    ☐☐☐☐FRANK A OROPEZA: Yes.

10   ☐☐☐☐JAMES TYLICK: Okay. Can you look at Exhibit Number 7?

11   ☐☐☐☐FRANK A OROPEZA: Yes.

12   ☐☐☐☐JAMES TYLICK: So based on earlier testimony and what's in

13   Exhibits 5 and 7, the last paragraph on, or the last

14   sentence in the last paragraph on Exhibit 7, it says: If

15   medical condition has not changed you must comply with the

16   approved FMLA restrictions or you may be subject to

17   disciplinary action. Your approved FMLA restrictions were

18   what, as shown on Exhibits 5 and 7? In bold.

19   ☐☐☐☐FRANK A OROPEZA: You're asking what question now?

20   ☐☐☐☐JAMES TYLICK: Wh- what were your approved FMLA

21   restrictions. How many days were you able to layoff?

22   ☐☐☐☐FRANK A OROPEZA: Four absences, it says four absences per

23   year, duration one day, unlikely weekend absence.

24   ☐☐☐☐JAMES TYLICK: Did you lay off more than that?

25   ☐☐☐☐FRANK A OROPEZA: Yes.

26   ☐☐☐☐JAMES TYLICK: Okay, no further questions. Uh, that's all

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    41

D000239

1    the questions I have for you at this time. Mr. Holdcroft,

2    any questions?

3    ◻◻◻◻DANIEL R HOLDCROFT: Not at this time, I do reserve the

4    right to recall. I would like to recall Mr. Compton for

5    just a few quick questions if you don't mind.

6    ◻◻◻◻JAMES TYLICK: Okay, I'll grant that. I will recall Mr.

7    Compton uh, I'll put in short recess for five minutes

8    while I get Mr. Compton. The time is 1300, the

9    investigation is in recess. Okay, we've uh, re- resumed

10   from recess, the time is 1301, Mr. Compton has joined us.

11   Mr. Holdcroft, uh, you mentioned that you had some

12   questions of Mr. Compton. Please go ahead with your

13   questions.

14   ◻◻◻◻DANIEL R HOLDCROFT: Mr. Compton, on uh, Exhibit 9 that

15   you entered is the list of search results. How do we

16   know these are FMLA lay- layoffs, I mean I'm seeing in

17   the event LCB which is company business, VAC which is

18   vacation, I'm not sure what CAL is, and where did this

19   paper come from? I mean it's, there's no official BNSF

20   heading on it, I mean, can you, can you explain how

21   this shows that he was off on FMLA on these days that

22   are listed?

23   ◻◻◻◻◻DARREN R COMPTON: Okay, uh, is that all, Mr. Holdcroft? I,

24   I do believe you asked about three questions that you want

25   me to answer.

26   ◻◻◻◻DANIEL R HOLDCROFT: Would you answer the first one first.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.   42

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    How do we know that these are FMLA layoffs.

2    ☐☐☐☐DARREN R COMPTON: Okay, if you'll look on column one, two,

3    three, four, five, six, FMLA, these are all FMLA lay,

4    layoffs. This is straight from the FMLA tracking system.

5    ☐☐☐☐DANIEL R HOLDCROFT: Okay, so what does the T stand for in

6    that FMLA type?

7    ☐☐☐☐DARREN R COMPTON: That that was an FMLA layoff.

8    ☐☐☐☐DANIEL R HOLDCROFT: Okay, do we have any way of knowing

9    that the T actually stands for an FMLA layoff?

10   ☐☐☐☐DARREN R COMPTON: Sure, let me uh, break it down a little

11   farther for you. Here is as a supporting documentation

12   straight from the attendance uh, data base, uh, BNSF TY&E

13   attendance system, this is for the month 11 of 2013, which

14   will cover September, October, and November of 2013 which

15   drove the letter from Mr. Wright with seven layoffs, and

16   as you can see it's a one page document and I went ahead

17   and labeled all of the FML layoffs one through seven. As

18   the second supporting documentation to Exhibit 9, it'll be

19   a two page document, same system, BNSF TY&E attendance

20   system, month seven of 2014 which will cover May, June,

21   and July of 2014 where I continued numbering the FMLA

22   layoffs eight through 17.

23   ☐☐☐☐JAMES TYLICK: Uh, Mr. Compton, does this document

24   pertain to FMLA absence of Mr. Oropeza for the

25   investigation at hand?

26   ☐☐☐☐DARREN R COMPTON: Yes, it does, this is solely from Mr.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

43

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    Oropeza as you can see from the document printed from

2    his B number.

3    ☐☐☐☐JAMES TYLICK: Okay, um, I'm going to enter this as an

4    exhibit and then give you a chance to go across uh, to

5    review this.

6    ☐☐☐☐DANIEL R HOLDCROFT: I'll need a copy of it, too, please.

7    ☐☐☐☐DARREN R COMPTON: And if I could answer your third and

8    final question where you referenced LCB and vacation

9    layoffs, that is a close event which means Mr. Oropeza had

10   laid off company business or vacation either before or

11   right after an FMLA layoff.

12   ☐☐☐☐DANIEL R HOLDCROFT: Okay, these days on here, I, I'm not

13   trying to pick on you or anything, I'm just kind of-

14   ☐☐☐☐JAMES TYLICK: Let, let me pause for just a second while

15   uh, so I can stay with everybody here. I'm going to enter

16   these as exhibits here and then let you follow with a, a

17   question, Mr. Holdcroft. Uh, Exhibit 13 is going to be the

18   attendance summary for the period ending November 2013 uh,

19   and that's two pages. Exhibit 14, I'm sorry, that's, uh,

20   Exhibit 13 is one page for November 2013. Uh, the next one

21   is Exhibit 14, you made as Exhibit 14, this is the period

22   ending July 2014 and that one is two pages. Okay, Mr.

23   . Holdcroft, please continue.

24   ☐☐☐☐DANIEL R HOLDCROFT: Okay. The, I don't know if I'm just

25   confused or, but I'm seeing multiple days at the same

26   time, I mean like on the page 2, the bottom one says

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

44

D000242

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    9/19/2013, 2015, and then right above it it says

2    9/19/2013, 2015, are those separate events or are they the

3    same event at the same time?

4        DARREN R COMPTON: Is what it's doing is you're looking at

5    an event that covers multiple days is the reason there's

6    multiple entries and then calculating his FMLA based on

7    the number of hours that he was off. That is column 4

8    where it says tracking, actually, I'm sorry, it's not

9    column 4, it's one, two, three, four, five, six, seven,

10    eight, column eight which says hours.

11        DANIEL R HOLDCROFT: Right.

12        DARREN R COMPTON: It goes FMLA is tracked by hours.

13        DANIEL R HOLDCROFT: Correct.

14        DARREN R COMPTON: And then it goes to the number of

15    layoffs, the actual number of times that they were laid

16    off, so that's the reason you see multiple entries for

17    certain dates, and that's calculated based on the number

18    of times he laid off which is supported by the documents I

19    just entered with an FML layoff code.

20        DANIEL R HOLDCROFT: Okay, so even though it, like you

21    said, I'm just trying to clarify, even though it has the

22    same date, the same time on multiple columns, it is more

23    than one layoff in the same time period.

24        DARREN R COMPTON: Let me try to explain this different.

25    There's 24 columns on this document.

26        DANIEL R HOLDCROFT: Correct.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    45

D000243

1    ☐☐☐☐DARREN R COMPTON: Of the 24 columns of this, or rows of

2    this document it constitutes 17 FMLA layoffs, even though

3    you see multiple days being the same date it is not a

4    separate layoff. It depends on the number of hours for

5    that layoff and how it was calculated and the number of

6    times that Mr. Oropeza went into the uh, TY&E layoff

7    screen to get laid off and entered a, a natural layoff

8    that he wanted to be off for.

9    ☐☐☐☐DANIEL R HOLDCROFT: Okay.

10    ☐☐☐☐DARREN R COMPTON: And which that is supported by the TY&E

11    layoff documents that I just support- that I just entered,

12    the attendance documents.

13    ☐☐☐☐☐DANIEL R HOLDCROFT: Do you have a copy of this attendance

14    documents?

15    ☐☐☐☐JAMES TYLICK: We can make a recess and have a co- and uh,

16    make copies.

17    ☐☐☐☐DANIEL R HOLDCROFT: Well, all I've got to do is just look

18    at it for a second and then we can make, make copies here

19    in a few. I have no further questions for Mr. Compton.

20    ☐☐☐☐JAMES TYLICK: Mr. Oropeza, do you have any questions for

21    Mr. Compton?

22    ☐☐☐☐FRANK A OROPEZA: No, sir.

23    ☐☐☐☐JAMES TYLICK: Uh, Mr. Compton, just for the record, on

24    Exhibit 13 and 14 uh, you stated that you numbered the

25    actual layoffs as an, that were FMLA, uh, what does EVTC

26    and the EBT, and then the next row, CD, what does that

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.  46

1    stand for Exhibit 13 and 14?

2    ☐☐☐☐DARREN R COMPTON: It stands for event code.

3    ☐☐☐☐JAMES TYLICK: And what is FML, I'm sorry, FML, what is

4    that?

5    ☐☐☐☐DARREN R COMPTON: That stands for a Family and Medical

6    Leave Act layoff.

7    ☐☐☐☐JAMES TYLICK: So the numbers that were written beside

8    those were actually Mr. Oropeza's FMLA layoffs?

9    ☐☐☐☐DARREN R COMPTON: Yes, he, he logged into the system and

10   requested a layoff that was approved for the time that he

11   requested.

12   ☐☐☐☐JAMES TYLICK: Okay, no more questions. Any questions for

13   Mr. Compton, Mr. Oropeza?

14   ☐☐☐☐FRANK A OROPEZA: No.

15   ☐☐☐☐JAMES TYLICK: Mr. Holdcroft, any questions?

16   ☐☐☐☐DANIEL R HOLDCROFT: No, sir.

17   ☐☐☐☐JAMES TYLICK: No? Okay. That's all the questions we have

18   for you at this time. Uh, you may be excused and if we

19   need you, please stay nearby.

20   ☐☐☐☐DARREN R COMPTON: I'll be in your office.

21   ☐☐☐☐JAMES TYLICK: Thank you. Do you guys want a quick recess

22   before we wrap up?

23   ☐☐☐☐DANIEL R HOLDCROFT: Yes, let's take a quick break.

24   ☐☐☐☐JAMES TYLICK: Okay, uh, let the record reflect that this

25   investigation is going to recess for ten minutes. The time

26   is 1310. Okay, we've returned from recess, the time is

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

47

Exhibit A

1    1318. I did bring Mr. Compton back for a few more

2    questions that I had. Uh, Mr. Compton, if you reference

3    Exhibit Number 5, on page 2, the first bullet point in the

4    second section there under: You also have the following

5    rates while under FMLA, it talks about having FMLA for up

6    to 26 weeks of unpaid service member leave, or 12 weeks of

7    family medical leave in a single 12 month period. Uh, Mr.

8    Compton, does that mean that anyone that is approved for

9    FMLA can layoff FMLA for up to 12 weeks in a 12 month

10    period, or how does, how does that work?

11    □□□□DARREN R COMPTON: Okay, what, what that was-

12    □□□□DANIEL R HOLDCROFT: I'm going to object because we're not

13    lawyers, we're not government officers, we're not, I mean,

14    we're just reading sentences off of a piece of paper. We,

15    we don't know exactly what the government means by up to

16    12 weeks or up to 26 weeks.

17    □□□□JAMES TYLICK: Uh, your objection is going to be made a

18    part of the record. As Darren is the uh, expert witness

19    here I'm going to allow him to provide a high level uh,

20    answer to my question. Please go ahead.

21    □□□□DARREN R COMPTON: Okay, when it's may be up to 12 weeks,

22    that would be the maximum that anybody could receive

23    under the FMLA uh, program. But the program is governed

24    by the primary care providing physician that determines

25    the number of times that they will need to see the

26    patient over that 12 month period that the FMLA is

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

48

1    granted for, and that is sent to the uh, processing

2    review team and that is what they go with is what the

3    primary care provider states that will be needed for the

4    care of the individual under care, so if he states one

5    day that's what they get. If he states 12 weeks that's

6    what they get. It's not an automatic 12 weeks and that's

7    what you can layoff to.

8        □□□□JAMES TYLICK: Okay, thank you. Uh, in Exhibit 5 and

9    Exhibit 7 uh, what does it say for the allowable FMLA

10   layoffs?

11       □□□□DARREN R COMPTON: Okay, under Exhibit 5, paragraph 2, in

12   bold letters at the end, it says the health care provider

13   is stating you may need four absences per year, duration

14   one day, unlikely weekend absences. Again, referenced on

15   Exhibit 7, paragraph 1, again in bold letters, your

16   approved FMLA allows you to layoff four, in parentheses 4,

17   absences per year with a duration of one to two days,

18   parentheses 1 to 2, uh, layoffs, and again, unlikely

19   weekend layoffs.

20       □□□□JAMES TYLICK: Okay, thanks. No more questions at this

21   time. Mr. Oropeza, do you have any questions of Mr.

22   Compton?

23       □□□□FRANK A OROPEZA: Uh, no.

24       □□□□JAMES TYLICK: Mr. Holdcroft, do you have any questions?

25       □□□□DANIEL R HOLDCROFT: Yes, I do. Um, Exhibit 1 which is the

26   original investigation notice, it states that uh, the last

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.    49

1     part of the last sentence says concerning your frequency

2     and duration of your FMLA absences from September 11th,

3     2013 and continuing while assigned as TY&E employee on the

4     Nebraska Division. So that started September 11, 2013, is

5     that correct?

6     ☐☐☐☐DARREN R COMPTON: That is correct because that is when Mr.

7     Oropeza was approved FMLA.

8     ☐☐☐☐DANIEL R HOLDCROFT: Okay, and on Exhibit 5 it, in the

9     highlighted section it says the health care provider is

10    stating you may need four absences per duration, per

11    year duration one day, unlikely weekend absence, is

12    that correct?

13    ☐☐☐☐DARREN R COMPTON: That is correct.

14    ☐☐☐☐DANIEL R HOLDCROFT: Okay, and it also on Exhibit 1 it

15    says the carrier's first date of knowledge regarding

16    this alleged rule violation is July 25th, 2014, is

17    that correct?

18    ☐☐☐☐DARREN R COMPTON: That is correct.

19    ☐☐☐☐DANIEL R HOLDCROFT: Okay, on the Exhibit 13 that you

20    brought back in, in September 19th, 22nd, 24th, and 26th,

21    which is after the September 11th there were four FML

22    layoffs in that month, is that correct?

23    ☐☐☐☐DARREN R COMPTON: In the month of September-

24    ☐☐☐☐DANIEL R HOLDCROFT: Yes.

25    ☐☐☐☐DARREN R COMPTON: 2013, is that the question?

26    ☐☐☐☐DANIEL R HOLDCROFT: Yes.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

50

D000248

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1 ☐☐☐☐DARREN R COMPTON: Yes, there were four layoffs.

2 ☐☐☐☐DANIEL R HOLDCROFT: Okay, and in October, on October 13th,

3 there was an FMLA layoff, is that correct?

4 ☐☐☐☐DARREN R COMPTON: That is correct.

5 ☐☐☐☐DANIEL R HOLDCROFT: So that is five FML layoffs counting

6 September and the first one in October, is that correct?

7 ☐☐☐☐DARREN R COMPTON: That is correct.

8 ☐☐☐☐DANIEL R HOLDCROFT: So would you not say that the time

9 limits have expired on this since this letter states

10 September 11th carrier's first knowledge is July 25th

11 when the carrier's first knowledge was actually October

12 13th of 2013?

13 ☐☐☐☐DARREN R COMPTON: That is incorrect.

14 ☐☐☐☐DANIEL R HOLDCROFT: Why is that, there was five layoffs

15 when he says you can only have four and that is the date

16 he took the fifth layoff.

17 ☐☐☐☐DARREN R COMPTON: That is correct, that is the day he took

18 the fifth layoff. The seven layoffs between September and

19 October drove the letter from Mr. Greg Wright stating

20 possible, or alleged possible FMLA abuse. You have laid

21 off seven times basically in two months after getting

22 approval in the first month seven times. We do that

23 because something may have changed in the care of that

24 individual. And it states right in the letter from Mr.

25 Wright and in the letter from the HR Processing Team if

26 something changes the employee is to notify them and get a

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company. 51

D000249

1    new health care certificate from their health care

2    provider so we can update the FMLA. The first date of

3    knowledge on Exhibit 1 that states 25 July 4- of 2014 is

4    when we conducted another audit of the FMLA layoffs and

5    when we found that Mr. Oropeza, based on Exhibit 13 and

6    14, had actually laid off 17 times in less than the 12

7    month period from the time that he was granted FMLA.

8    ☐☐☐☐DANIEL R HOLDCROFT: Okay, and referencing that last

9    question, on the date of the alleged rules violation, the

10   letter from Mr. Wright was dated November 14th, 2013, is

11   that correct? It's Exhibit 7.

12   ☐☐☐☐DARREN R COMPTON: That is correct, November 14, 2013.

13   ☐☐☐☐DANIEL R HOLDCROFT: Okay, and it says layoff up to four

14   absences per year, with a duration one or to two,

15   parentheses 1-2 days per layoff, unlikely weekend layoffs,

16   is that correct?

17   ☐☐☐☐DARREN R COMPTON: Yes, that is what the letter says.

18   ☐☐☐☐DANIEL R HOLDCROFT: Okay, since you said that it was after

19   this letter was issued, which was November of 2013, in

20   June of 2014 the 8th, 10th, 13th, 15th, and 17th of June

21   were all FMLA layoffs, is that correct?

22   ☐☐☐☐DARREN R COMPTON: According to the TY&E system that I

23   presented as Exhibit 14, that is correct.

24   ☐☐☐☐DANIEL R HOLDCROFT: Okay, so he actually went over his

25   four layoffs on June 17th of 2014, is that correct, that's

26   where he actually went over his four layoffs and hit his

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.        52

D000250

1    fifth layoff.

2    ☐☐☐☐DARREN R COMPTON: Uh, that actually is incorrect if you

3    go by when FMLA was first approved we go back to the 13th

4    of October date. If you're referencing after the letter

5    of Mr. Greg Wright, that would be his fourth layoff, that

6    is correct.

7    ☐☐☐☐DANIEL R HOLDCROFT: Okay, so the fifth layoff would have

8    been June 17th, 2014.

9    ☐☐☐☐DARREN R COMPTON: Correct.

10   ☐☐☐☐DANIEL R HOLDCROFT: Okay. So I would ask if uh, that

11   should not have been carrier's first knowledge seeing as

12   how it goes into the TY&E computer and everything is

13   updated on an on-time basis, should that not have been the

14   carrier's first knowledge?

15   ☐☐☐☐DARREN R COMPTON: No, first knowledge was when the audit

16   was done and the layoffs were discovered.

17   ☐☐☐☐DANIEL R HOLDCROFT: I have no further questions for

18   Mr. Compton.

19   ☐☐☐☐JAMES TYLICK: Okay. Mr. Oropeza, do you have any questions

20   for Mr. Compton?

21   ☐☐☐☐FRANK A OROPEZA: Uh, no, not at this time.

22   ☐☐☐☐JAMES TYLICK: Okay, that's all the questions we have

23   for you at this time. If you would be please be

24   excused, remain nearby, don't discuss the investigation

25   with anyone.

26   ☐☐☐☐DARREN R COMPTON: Okay.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

1      JAMES TYLICK: And uh, if we do need you we will call you

2      back.

3      DARREN R COMPTON: Yes, sir.

4      JAMES TYLICK: Thank you. Ready to continue? Mr. Or-

5      Oropeza, are you periodically examined over the rules?

6      FRANK A OROPEZA: Yes.

7      JAMES TYLICK: Have you passed such rule examinations?

8      FRANK A OROPEZA: Yes.

9      JAMES TYLICK: Uh, in the course of this investigation

10     there were uh, several General Code of Operating Rules

11     that were entered as exhibits, uh, GCOR 1.13, that's

12     Exhibit 10, GCOR 1.6, that's Exhibit 11, those rules

13     examinations that you uh, mentioned that you have taken,

14     do those include the General Code of Operating Rules?

15     FRANK A OROPEZA: Uh, you have the exhibits there so, I

16     mean, what's your-

17     JAMES TYLICK: My question is the tests that you take for

18     rules examinations, do those rules include GCOR?

19     FRANK A OROPEZA: Yes.

20     JAMES TYLICK: Does your job require you to pass such rules

21     examinations?

22     FRANK A OROPEZA: Uh, yes.

23     JAMES TYLICK: Do you understand the provisions of GCOR

24     1.13 and 1.6?

25     DANIEL R HOLDCROFT: I'm going to object to that. Mr.

26     Oropeza's tested on so many rules he's probably seen more

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

D000252

Case 4:16-cv-01013-GAF   Document 31-2   Filed 06/16/17   Page 100 of 106

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1   rules in his career than, more rules tests in his career

2   than he can probably remember. There's no way to know if

3   he's actually been tested on those exact rules.

4   ☐☐☐☐JAMES TYLICK: Okay, uh, your objection is noted. I will

5   restate the question. It is, wasn't quite the, I didn't

6   ask the question if he is tested on those rules. I asked

7   if he understands the provisions of GCOR 1.3 and 1.13 and

8   allow him an opportunity to answer. Mr. Oropeza?

9   ☐☐☐☐FRANK A OROPEZA: Yes.

10   ☐☐☐☐JAMES TYLICK: You do understand the provision of

11   those rules?

12   ☐☐☐☐FRANK A OROPEZA: Yes.

13   ☐☐☐☐JAMES TYLICK: Have you had the opportunity to review all

14   exhibits and question all witnesses?

15   ☐☐☐☐FRANK A OROPEZA: Uh, yes.

16   ☐☐☐☐JAMES TYLICK: Okay. Do you desire to make a closing

17   statement on your behalf?

18   ☐☐☐☐FRANK A OROPEZA: I will leave that up to uh, my Local

19   Chairman for a final statement.

20   ☐☐☐☐JAMES TYLICK: Okay. Mr. Holdcroft, have you had an

21   opportunity to review all exhibits and question all

22   witnesses here today?

23   ☐☐☐☐DANIEL R HOLDCROFT: Yes.

24   ☐☐☐☐JAMES TYLICK: Do you desire to make a closing statement on

25   behalf of Mr. Oropeza?

26   ☐☐☐☐DANIEL R HOLDCROFT: Yes, I do.

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

55

Principal: Frank A Oropeza
Transcript of Investigation held 09/18/2104
NEB-TYE-09182014-1100-1550813-OROPEZA

1    ☐☐☐☐JAMES TYLICK: Please go ahead.

2    ☐☐☐☐DANIEL R HOLDCROFT: Per the exhibits that have been

3    entered, Exhibit 5 states may need four absences. It

4    doesn't say less than four, more than four, it says may.

5    Per the Department of Labor's FMLA Leave Act, it says

6    employees may take up to 12 weeks, work weeks of leave

7    during any 12 month period. Mr. Oropeza did not take more

8    than 12 weeks, he took 17 days, which.if you count that as

9    work weeks, would be two weeks and two days, or three

10    weeks and two days. And also, we're going to contend that

11    the carrier's first knowledge of this event was actually,

12    according to Exhibit 14, June 17th, 2014 at 1916, not July

13    25th, 2014, which would put this investigation out of the

14    time limits per the collective bargaining agreement, and

15    Mr. Oropeza has brought documentation showing when we

16    asked, you know, if there was a need for more, more than

17    four days, there was. There are four days for doctor's

18    visits, not four days total, so we contend that this

19    investigation should be dismissed due to the time limit

20    constraints on it seeing how we were out of the collective

21    bargaining agreement time limits since as of June 17th

22    should have been the carrier's first knowledge since they

23    are up to date and accurate and we request two copies of

24    the transcripts and all make whole for Mr. Oropeza.

25    ☐☐☐☐JAMES TYLICK: Okay, thank you. If there are no

26    further objections it is now 1332 and this

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

D000254

1     investigation is closed.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Any reprinting, copying, modifying, publishing, assignment, transfer, or other distribution of
this transcript is strictly prohibited without the prior written consent of BNSF Railway Company.

57

**From:** Cargill, Derek A **On Behalf Of** PEPA
**Sent:** Monday, September 29, 2014 12:49 PM
**To:** Tylick, James
**Cc:** PEPA
**Subject:** RE: Dismissal Investigation for Review: FA Oropeza

I've reviewed the transcript and exhibits from Mr. Oropeza's investigation, along with his personnel record. **Based on my review, I recommend dismissal.**

The charges were proven with substantial evidence and the investigation was procedurally solid. Following the November 14, 2013 notice letter, Mr. Oropeza continued to lay off in excess of the amount of days for which he was approved. He clearly failed to comply with the written instructions from Mr. Wright, which is his second Level S violation. Notably, this is Mr. Oropeza's 14th discipline event since 2006. Let me know if further discussion is needed.

Derek Cargill
BNSF Railway - Labor Relations
Office - (817) 352-1046
Fax - (817) 352-7482
Click *Here* for Labor Relations

**From:** Tylick, James
**Sent:** Thursday, September 25, 2014 8:21 PM
**To:** PEPA
**Cc:** Dickerson, Joe W; Compton, Darren R
**Subject:** Dismissal Investigation for Review: FA Oropeza

PEPA:

Please review this investigation draft for TY&E employee FA Oropeza to determine your support for dismissal (this event would be a second Level S violation – employee currently on an active Level S from Jan 2012 with 36 month review). The investigation charges Mr. Oropeza with a GCOR 1.6 and GCOR 1.13 violation for failure to comply with instructions issued by DOA Greg Wright dated 11/14/13 concerning frequency and duration of FMLA absences.

Mr. Oropeza stated that his FMLA layoffs exceeded what was allowed (page 26 & 41) and stated that he did not receive updated approval (outside of Exhibit 5/7) allowing additional FMLA absences other than 4x year (page 36).

1



Based on Frisco engineer timelines, a decision must be made with 30 days of the investigation, the investigation was held September 18, 2014.

Thanks,

Jim Tylick| BNSF Railway |Terminal Manager – Murray Yard| ✉ james.tylick@bnsf.com | ☎ 816-472-2410

Case 4:16-cv-01013-GAF   Document 31-2   Filed 06/16/17   Page 105 of 106
D000187

**From:** Cargill, Derek A
**Sent:** Monday, December 08, 2014 12:57 PM
**To:** Siegele, Milton
**Subject:** PEPA - Frank Oropeza - Case #13

Milton,

Case #13 involves the dismissal of Frank Oropeza. I wanted to make you aware that Mr. Oropeza was dismissed previously in June, 2009 for an attendance violation. He was subsequently reinstated without pay on a last chance basis in February, 2010. This was a leniency reinstatement, and not the result of an arbitration award. I put the relevant documents on your chair for your reference. Let me know if you have any questions.

**Derek Cargill**
BNSF Railway - **Labor Relations**
**Office - (817) 352-1046**
**Fax - (817) 352-7482**
**Click *Here* for Labor Relations**



DEFENDANT'S DEPOSITION
EXHIBIT
2.1

1

D000188